HENRY HARPER, ET AL.

V.

VIRGINIA DEPARTMENT OF TAXATION

Record No. 900770

LAWRENCE E. LEWY, ET AL.

V.

VIRGINIA DEPARTMENT OF TAXATION

Record No. 900792

March 1, 1991

Present: Carrico, C.J., Compton, Stephenson, Whiting, Lacy, and Hassell, JJ.,
and Cochran, Retired Justice

234

Michael J. Kator (Stephen A. Bryant; W. Lester Duty; Mary-Leslie Duty; Gregory S. Hooe; Duty and Duty; Traylor & Morris, on briefs), for appellants. (Record No. 900770)

Gail Starling Marshall, Deputy Attorney General (Mary Sue Terry, Attorney General; H. Lane Kneedler, Chief Deputy Attorney General; Barbara M. Rose, Senior Assistant Attorney General; Gregory E. Lucyk, Senior Assistant Attorney General; Barbara H. Vann, Assistant Attorney General, on brief), for appellee. (Record No. 900770)

Joseph Hyman (Lawrence E. Lewy; George J. Rabin, on briefs), for appellants. (Record No. 900792)

Gail Starling Marshall, Deputy Attorney General (Mary Sue Terry, Attorney General; H. Lane Kneedler, Chief Deputy Attor-

ney General; Barbara M. Rose, Senior Assistant Attorney General; Gregory E. Lucyk, Senior Assistant Attorney General; Barbara H. Vann, Assistant Attorney General, on brief), for appellee. (Record No. 900792)

JUSTICE STEPHENSON delivered the opinion of the Court.

In *Davis* v. *Michigan Dept. of Treasury*, 489 U.S. 803 (1989), the Supreme Court of the United States declared that state taxation of pension income of retired federal government employees, while exempting from taxation pension income of retired state government employees, violated the doctrine of intergovernmental tax immunity embodied in the supremacy clause of the Constitution of the United States. The Supreme Court, however, did not decide whether its decision in *Davis* had retrospective application.[1]

In these consolidated appeals, the appellants (collectively, Harper) are retired federal employees who receive either civil service retirement benefits or military retired pay. They filed suits in the trial court against the Virginia Department of Taxation (the Commonwealth) in May 1989, seeking refunds, pursuant to Code § 58.1-1826, for state income taxes paid for tax years 1985, 1986, 1987, and 1988. After consolidating the several suits, the trial court ruled that *Davis* should be applied prospectively only and, therefore, that Harper was not entitled to the refunds. Harper appeals.

In this appeal, the principal issue is whether *Davis* should be applied only prospectively, thereby denying the refunds, or retroactively, thereby granting the refunds.

I

■ Whether a constitutional decision of the Supreme Court is applied retroactively is a matter of federal law. *American Trucking Associations, Inc.* v. *Smith*, 496 U.S. ____, ____, 110 S.Ct. 2323, 2330 (1990). In the civil context, retroactive application of such decisions is governed by the three-pronged test announced in *Chevron Oil Co.* v. *Huson*, 404 U.S. 97 (1971). *Smith*, 496 U.S.

---

[1] The Supreme Court did not consider this issue because Michigan conceded that "to the extent appellant has paid taxes pursuant to this invalid tax scheme, he is entitled to a refund." *Davis*, 489 U.S. at 817.

at ____, 110 S.Ct. at 2331; *see U.S.* v. *Johnson*, 457 U.S. 537, 563 (1982).

In *Smith*, the Supreme Court considered a state's taxing statute that previously had been declared unconstitutional under the commerce clause of the Federal Constitution. 496 U.S. at ____, 110 S.Ct. at 2329. The Court denied the claimant's request for a refund of taxes paid prior to an earlier decision that invalidated the taxing statute. *Id.* at ____, 110 S.Ct. at 2334. In so doing, a plurality of the Court employed the three-pronged *Chevron* test and concluded that its earlier decision should not be applied retroactively. The Court found that its earlier decision invalidating an Arkansas highway tax, *American Trucking Assns., Inc.* v. *Scheiner*, 483 U.S. 266 (1987), established a "new principle of law" under the commerce clause. *Id.* at ____, 110 S.Ct. at 2332. Arkansas's legislature, therefore, was justified in relying upon existing precedent and had "good reason to suppose" the enactment of the tax would not violate the Federal Constitution. *Id.* at ____, 110 S.Ct. at 2333.

Harper contends, nonetheless, that "because the taxes at issue here . . . constitute[d] an 'unconstitutional deprivation,' . . . Virginia must provide 'backward-looking relief' to the refund claimants." Harper asserts that such relief is required by the holding in *McKesson Corp.* v. *Division of Alcoholic Beverages and Tobacco*, ____ U.S. ____, 110 S.Ct. 2238 (1990).

In *McKesson*, decided on the same day as *Smith*, the Supreme Court held that a "clear and certain remedy," which could include refunds, was required to remedy Florida's unconstitutional liquor tax statute. ____ U.S. at ____, 110 S.Ct. at 2252. In so holding, the Court rejected Florida's contention that its taxing authority implemented the tax preference scheme " 'in good faith reliance on a presumptively valid statute.' " *Id.* at ____, 110 S.Ct. at 2254. In rejecting that contention, the Court stated that the challenged tax statute "reflected only cosmetic changes from the prior version of the tax scheme that itself was virtually identical to the Hawaii scheme invalidated" in *Bacchus Imports, Ltd.* v. *Dias*, 468 U.S. 263 (1984). Thus, the Court concluded, Florida "[could] hardly claim surprise" when its later statute was invalidated. *Id.* at ____, 110 S.Ct. at 2255.

In the present case, nothing in the record suggests that the Commonwealth acted other than in good faith reliance upon a presumptively valid taxing statute. We conclude, pursuant to

*Smith,* that the three-pronged *Chevron* test must be employed to determine whether the *Davis* decision should be applied prospectively only.

## A

■ For a decision to be applied prospectively only, the first prong of the *Chevron* test requires that the decision "establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed." 404 U.S. at 106. Satisfaction of this first prong usually has been stated as the "threshold test" for determining whether or not a decision should be applied prospectively only. *Johnson,* 457 U.S. at 550 n.12.

When *Davis* was decided, 23 states had statutes similar to the Michigan statute.[2] Virginia's statute had been in effect for almost half a century. *See* Acts 1942, c. 325. As far as the record shows, the federal pensioners had paid the tax without protest. Not a single federal pensioner had brought an action during that period in a Virginia court seeking a refund of taxes on the basis of the intergovernmental tax immunity doctrine. The absence of such litigation reasonably may be explained by examining the doctrine's origin and development.

■ The intergovernmental tax immunity doctrine had its genesis in *McCulloch* v. *Maryland,* 17 U.S. (4 Wheat.) 316 (1819). The doctrine was grounded on the proposition that "[s]tates have no power, by taxation or otherwise, to retard, impede, burden or

---

[2] *See* Ala. Code Sections 36-27-28 and 40-18-19 (Supp. 1988); Ariz. Rev. Stat. Ann. Section 43-1022 (Supp. 1988); Ark. Code Ann. Section 26-51-3206; Colo. Rev. Stat. Section 39-22-104(4)(f) and (g) (Supp. 1988); Ga. Code Ann. Section 48-7-27(a)(4)(A) (Supp. 1988); Iowa Code Ann. Section 97A.12 (West 1984); Kan. Stat. Ann. Section 74-4923(b) (1985); Ky. Rev. Stat. Ann. Section 16.690 (Michie/Bobbs-Merrill Supp. 1988); La. Rev. Stat. Ann. 47:44.1 (Supp. 1989); Mich. Comp. Laws Ann. Section 206.30 (1988); Miss. Code Ann. Section 25-11-129 (1972); Mo. Rev. Stat. Section 86.190 and 104.540 (1986); Mont. Code Ann. Section 15-30-111(2) (1987); N.M. Stat. Ann. Section 10-11-145 (1978); N.Y. Tax Law Section 612(c)(3) McKinney (1987); N.C. Gen. Stat. Section 135-9 (1988); Okla. Stat. tit. 68 § 2358 (1988); Ore. Rev. Stat. Section 316.680(1)(c) and (d) (1987); S.C. Code Section 12-7-435(a), (d), and (e) (Supp. 1988); Utah Code Ann. Section 49-1-608 (1989); Va. Code Section 58.1-322(C)(3) (Supp. 1988); W.Va. Code Section 11-21-12(c)(5) and (6) (Supp. 1988); Wis. Stat. Section 71.05(1)(a) (Supp. 1988).

in any other manner control, the operations [of the federal government]." *Id.* at 436.

The pre-*Davis* cases invalidating state taxing statutes were decided on the proposition that the tax had a foreseeable and direct effect on some operation of the federal government. *See, e.g., Memphis Bank & Trust Co.* v. *Garner,* 459 U.S. 392 (1983) (state tax that imposes greater burden on holders of federal obligations than on holders of similar state obligations impermissibly discriminates against securities issued by federal government); *Phillips Chemical Co.* v. *Dumas Indep. Sch. Dist.,* 361 U.S. 376 (1960) (state tax that imposes greater burden on lessees of federal property than on lessees of other exempt public property impermissibly discriminates against federal government). Indeed, *Davis* states that intergovernmental tax immunity is based on "the need to protect each sovereign's governmental operations from undue interference by the other." 489 U.S. at 814.

In the present case, therefore, it is difficult to discern how the General Assembly of Virginia should have been expected to perceive that a statutory scheme, exempting state pensioners from state taxation, would have placed any foreseeable and direct burden on some federal operation. Consequently, we conclude that the *Davis* decision established a new rule of law by deciding an issue of first impression whose resolution was not clearly foreshadowed. Thus, the first prong of the *Chevron* test is satisfied.

## B

The second *Chevron* prong requires a court to "weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." 404 U.S. at 106-07. In applying this factor, we must determine whether the intergovernmental tax immunity doctrine will be retarded or furthered by retroactive application of the *Davis* decision.

The purpose of intergovernmental tax immunity is not to prevent legitimate state taxation. *See Smith,* 496 U.S. at ____, 110 S.Ct. at 2332. Virginia's taxing statute was legitimate until a new rule was announced in *Davis.* As soon as the General Assembly became aware of the *Davis* decision, it acted to correct the defects in its statute. *See* Acts 1989, Special Session II, c. 3. As a result, the purpose of the intergovernmental tax immunity doctrine already has been fully served, and applying *Davis* retroactively

would do nothing either to retard or to further the doctrine's purpose. Therefore, the second prong of the *Chevron* test is satisfied.

## C

The third prong of the *Chevron* test requires a court to "[weigh] the inequity imposed by retroactive application." 404 U.S. at 107. In weighing the equities, considerable deference must be accorded a state's reliance upon a statute that was presumptively valid. *See Lemon v. Kurtzman*, 411 U.S. 192 (1973). Indeed, "[i]t is well established that reliance interests weigh heavily in the shaping of an appropriate equitable remedy." *Id.* at 203. As Chief Justice Burger so aptly stated in *Lemon*, "statutory or even judge-made rules of law are hard facts on which people must rely in making decisions and in shaping their conduct. This fact of legal life underpins our modern decisions recognizing a doctrine of nonretroactivity." *Id.* at 199.

An important equitable consideration is the effect that retroactive application of a judicial decision may have on a state's financial stability. As the *Smith* plurality acknowledged, applying a judicial decision retroactively may "have potentially disruptive consequences for the State and its citizens. A refund, if required by state or federal law, could deplete the state treasury, thus threatening the State's current operations and future plans." 496 U.S. at ____, 110 S.Ct. at 2333.

In *Arizona Governing Committee v. Norris*, 463 U.S. 1073, 1105 (1983), the Supreme Court held that the State of Arizona's voluntary pension plan violated Title VII of the Civil Rights Act of 1964. The Court further held, however, that the state's liability would be prospective only. *Id.* The Court found that retroactive liability could cost the state hundreds of millions of dollars. As Justice Powell stated, "[i]mposing such unanticipated financial burdens would come at a time when many States and local governments are struggling to meet substantial fiscal deficits." *Id.* at 1106-07. Because the illegality of Arizona's actions had not been declared until *Norris* was decided, Justice Powell further stated that "[t]here is no justification for this Court . . . to impose this magnitude of burden retroactively on the public." *Id.* at 1107.

In the present case, the record discloses that retroactive application of the *Davis* decision would give rise to a potential tax refund liability, inclusive of interest, of approximately $440,000,000. This liability would come at a time when the Com-

monwealth is already struggling to meet enormous fiscal deficits. The record contains affidavits of Commonwealth officials that support the conclusion that allowing the requested refunds would have a potentially disruptive and destructive impact on the Commonwealth's planning, budgeting, and delivery of essential state services.

Harper contends, nonetheless, that "it is simply more equitable to place the financial consequences . . . upon the government (and thus the whole body of taxpayers) than upon a small subclass of taxpayers who had unconstitutionally been forced to pay the tax in the first instance." Thus, Harper asserts, "taxpayers who have been paying more than their lawful share of taxes should be reimbursed by those who have paid less."

The Commonwealth counters by pointing out that "hundreds of thousands of other Virginia taxpayers have paid taxes on their private pension income but have no claim for monetary relief." The Commonwealth further asserts that "over 2.5 million Virginians annually have paid their 'fair share' of taxes while only some sixty thousand state and local retirees were excluded from pension income taxation."

■ The record supports the Commonwealth's assertions, and we conclude that, on balance, the equities weigh heavily in favor of the Commonwealth. Consequently, the third prong of the *Chevron* test is satisfied.

■ Accordingly, we hold that, under the *Chevron* test, the *Davis* decision is not to be applied retroactively. *Accord Bass* v. *State*, 395 S.E.2d 171 (S.C. 1990).

## II

■ Harper contends, nonetheless, that the refunds are due as a matter of state law. He relies upon Code §§ 58.1-1825 and -1826. Code § 58.1-1825 provides that "[a]ny person assessed with any tax administered by the Department of Taxation and aggrieved by any such assessment may . . . within three years from the date such assessment is made, apply to a circuit court for relief." Code § 58.1-1826 provides, in pertinent part, as follows:

> If the court is satisfied that the applicant is erroneously or improperly assessed with any taxes, the court may order that the assessment be corrected. If the assessment exceeds the proper amount, the court may order that the applicant be

exonerated from the payment of so much as is erroneously or improperly charged, if not already paid and, if paid, that it be refunded to him. If the assessment is less than the proper amount, the court shall order that the applicant pay the proper taxes and to this end the court shall be clothed with all the powers and duties of the authority which made the assessment complained of as of the time when such assessment was made and all the powers and duties conferred by law upon such authority between the time such assessment was made and the time such application is heard. The court may order that any amount which has been improperly collected be refunded to such applicant.

Harper asserts that, even if the *Davis* decision applies prospectively only, the federal retirees are entitled to refunds under Code § 58.1-1826. Harper argues that, because the assessments are unconstitutional, they also are "erroneous or improper."

█ We reject this argument. We hold that, because the *Davis* decision is not to be applied retroactively, the pre-*Davis* assessments were neither erroneous nor improper within the meaning of Code § 58.1-1826.

█ Harper's state-law contention also fails for another reason. We previously have held that this Court's ruling declaring a taxing scheme unconstitutional is to be applied prospectively only. *Perkins* v. *Albemarle County*, 214 Va. 240, 198 S.E.2d 626, *aff'd and modified on rehearing*, 214 Va. 416, 200 S.E.2d 566 (1973).[3] We adhere to our holding in *Perkins*. In so doing, we follow the criteria stated in *Fountain* v. *Fountain*, 214 Va. 347, 348, 200 S.E.2d 513, 514 (1973), *cert. denied*, 416 U.S. 939 (1974), that "consideration should be given to the purpose of the new rule, the extent of the reliance on the old rule, and the effect on the administration of justice of a retroactive application of the new rule."

---

[3] The case of *Capehart* v. *City of Chesapeake*, No. 5459 (Circuit Court, City of Chesapeake, decided Oct. 16, 1974), followed *Perkins*. In *Capehart*, more than one hundred taxpayers in the City of Chesapeake, who had been subjected to the same practice that was invalidated in *Perkins*, brought suit in circuit court seeking, among other things, refunds of the taxes "illegally and unconstitutionally assessed." The City demurred, citing *Perkins*. The circuit court sustained the demurrer, being of opinion that the case was controlled by *Perkins*. We denied Capehart's petition for appeal, 215 Va. xlvii, and Capehart's petition for certiorari raising due process grounds was denied by the Supreme Court, 423 U.S. 875 (1975).

See also *Quick* v. *Harris*, 214 Va. 632, 634, 202 S.E.2d 869, 871 (1974), *cert. denied*, 420 U.S. 907 (1975).

## III

■ Finally, Harper contends that "even if *Davis* were applied prospectively only, refunds for 1988 taxes would nonetheless be due, for they were not assessed, and in many cases were not paid, until *after Davis* was decided." (Emphasis in original.) *Davis* was decided on March 28, 1989. The last day for filing individual income tax returns for the 1988 taxable year was May 1, 1989. Harper claims that the last day for filing income tax returns is the date on which income taxes are assessed for the preceding year.[4] We do not agree.

Income taxes are "imposed on the Virginia taxable income *for each taxable year* of every individual." Code § 58.1-320. (Emphasis added.) The taxable year ended on December 31, 1988, almost three months before *Davis* was decided. When the year ended, the 1988 tax was fixed and ascertainable. Only payment of the tax was delayed until May 1, 1989. Code § 58.1-341.

■ The Supreme Court rejected a similar contention in *Smith*. The Court reasoned that tax liability depends upon the " 'occurrence of the taxed transaction or the enjoyment of the taxed benefit, not the remittance of the tax.' " *Smith*, 496 U.S. at ___, 110 S.Ct. at 2335. As Justice O'Conner observed,

> [a] contrary rule would give States a perverse incentive to collect taxes far in advance of the occurrence of the taxable transaction. It would also penalize States that do not immediately collect taxes, but nevertheless plan their operations on the assumption that they will ultimately collect taxes that have accrued.

*Id.* at ___, 110 S.Ct. at 2336.[5]

---

[4] Harper's reliance upon Code § 58.1-1820 is misplaced. Section 58.1-1820 defines "assessment" as that term is used in Article 2 of Chapter 18, which establishes limitation periods for various forms of relief. Individual income tax liability is established in Article 2 of Chapter 3.

[5] For the same reason, we reject the contention in *Lewy* (Record No. 900792) that the trial court erred in denying injunctive relief that would have barred the Commonwealth from filing any action to collect taxes from those who, after the *Davis* decision, had refused to pay the 1988 taxes.

## IV

In sum, we hold that, (1) under the *Chevron* test, the *Davis* decision is not to be applied retroactively, (2) state law does not require tax refunds, but to the contrary, grants prospective-only application to decisions that invalidate a taxing scheme, and (3) our denial of refunds includes taxes due for the tax year 1988. Accordingly, the trial court's judgment will be affirmed.

Record No. 900770—*Affirmed.*
Record No. 900792—*Affirmed.*