COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Huff,[*] Judges Chafin and Decker
Argued at Richmond, Virginia

DEPARTMENT OF MEDICAL
  ASSISTANCE SERVICES/
  COMMONWEALTH OF VIRGINIA

                                              MEMORANDUM OPINION[**] BY
v.      Record No. 0767-14-2                  JUDGE TERESA M. CHAFIN
                                              MARCH 17, 2015

ABLIX CORPORATION, d/b/a
  ACCESSIBLE HOME HEALTH
  CARE OF NORTHERN VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Gregory L. Rupe, Judge

Michelle A. L'Hommedieu, Assistant Attorney General (Mark R.
Herring, Attorney General; Cynthia V. Bailey, Deputy Attorney
General; Kim F. Piner, Senior Assistant Attorney General, on
briefs), for appellant.

Jonathan M. Joseph (Belinda Jones; Christian & Barton, L.L.P., on
brief), for appellee.


        The Director of the Department of Medical Assistance Services ("DMAS" or the

"Department") issued a final agency decision ("FAD") requiring that Ablix Corporation, doing

business as Accessible Home Health Care of Northern Virginia ("Ablix" or the "Provider"),

reimburse the Department $164,599.28 for personal care services and $33,417.96 for respite care

services, for a total of $198,017.24.  The decision was based on a failure to maintain adequate

documentation.  Ablix appealed to the Circuit Court for the City of Richmond, which reversed the

Department's decision, finding that the decision was "arbitrary and capricious concerning the

_____
        [*] On January 1, 2015, Judge Huff succeeded Judge Felton as chief judge.

        [**] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

documentation in the Agency Record." However, the circuit court denied Ablix's request for attorneys' fees. The Department now appeals to this Court, raising the following assignments of error:

> 1. The Circuit Court erred in failing to apply the correct standard of review for court review of an agency case decision under the Virginia Administrative Act.
>
> 2. The Circuit Court erred in ruling that the DMAS Director's FAD was arbitrary and capricious with regard to Error Codes 901, 914, and 916.
>
> 3. The Circuit Court erred in denying DMAS' Motion to Vacate the March 28, 2014 Final Order and enter an order sustaining the DMAS Director's FAD based on the on-point, published decision of 1st Stop Health Servs. v. Dep't of Med. Assistance Servs., 63 Va. App. 266, 756 S.E.2d 183 (2014), which clarified that the Circuit Court's March 28, 2014 Final Order was incorrect.
>
> 4. The Circuit Court erred in ruling that the DMAS Director's FAD regarding Error Code 901 had been appealed and was within the Circuit Court's jurisdiction under the Virginia Administrative Process Act ("VAPA"); therefore, the Circuit Court erred in denying DMAS' Motion to Clarify the March 28, 2014 Final Order pertaining to Error Code 901, and by failing to amend its March 28, 2014 Final Order to sustain the DMAS Director's FAD regarding Error Code 901.

Ablix assigns error to the circuit court's denial of its request for attorneys' fees.

Background

DMAS is the state agency responsible for the administration of the medical assistance program known as Medicaid. It is a program funded by both the state and federal governments to provide medical assistance to the eligible and medically indigent citizens of the Commonwealth of Virginia. 42 U.S.C. § 1396(a) of the Social Security Act requires the state to promulgate a medical assistance plan setting forth state regulations governing Virginia's Medicaid Program. DMAS is authorized to exercise administrative discretion and to issue rules, regulations, and policies on Department matters. 42 C.F.R. § 431.10(e)(1)(i) and (ii).

- 2 -

The purpose of the Medicaid program is not only to provide needed medical services and equipment, but also to do so in a fiscally responsible manner. Federal regulations require that DMAS assure financial accountability for funds expended for home and community-based services. 42 C.F.R. § 441.302(b). In accordance with DMAS regulations, Medicaid providers must maintain records sufficient to document fully and accurately the nature, scope, and details of the services provided. 12 Va. Admin. Code § 30-120-930(A)(11).

"Under the Elderly or Disabled with Consumer Direction (EDCD) Waiver program, elderly or disabled individuals can receive services that enable them to remain in their homes or communities instead of residing in a nursing home." 1st Stop Health Servs. v. Dep't of Med. Assistance Servs., 63 Va. App. 266, 270, 756 S.E.2d 183, 185 (2014). See 12 Va. Admin. Code § 30-120-900. The Department's policies and procedures applicable to these services are set forth in the Department's regulations and in the Department's EDCD Waiver Services Provider Manual (the "Manual").

Ablix is an enrolled provider of services under the Medicaid program and provides both "personal care" and "respite care" services. Personal care services focus on assisting the patient, and involve "activities such as bathing, eating, toileting, reminding the patient to take medication, and housekeeping." 1st Stop, 63 Va. App. at 270, 756 S.E.2d at 186. See 12 Va. Admin. Code § 30-120-950. Respite care services are designed to provide temporary relief to an unpaid caregiver. 12 Va. Admin. Code § 30-120-960(C). However, the services provided as respite care are the same as or similar to the services provided as personal care. Id. "DMAS issues a 'Preauthorization Notice' to the provider authorizing the provider to bill for a predetermined number of hours for each patient." 1st Stop, 63 Va. App. at 271, 756 S.E.2d at 186.

In a contract known as the Provider Participation Agreement, Ablix agreed "to provide services in accordance with the Provider Participation Standards published periodically by DMAS in the appropriate Provider Manual(s) . . . ." The Agreement also required Ablix to "keep such records as DMAS determines necessary." Ablix was also required "to comply with all applicable state and federal laws, as well as administrative policies and procedures of [DMAS] as from time to time amended."

DMAS conducts "utilization reviews" and financial reviews to ensure compliance with policy and regulations. According to the EDCD Manual, the purpose of utilization reviews

> is to determine whether services delivered were appropriate, whether services continue to be needed, and the amount and kind of services required. Utilization review is mandated to ensure that the health, safety, and welfare of the individuals are protected and to assess the quality, appropriateness, level, and cost-effectiveness of care.

1st Stop, 63 Va. App. at 271, 756 S.E.2d at 186 (quoting EDCD Manual, Chapter 6, p. 4). The EDCD Manual also states that DMAS can conduct a "financial review and verification of services . . . to ensure that the provider bills only for those services which have been provided in accordance with DMAS policy and which are covered under the EDCD Waiver." EDCD Manual, Chapter 6, p. 12. "The Manual goes on to specify that '[a]ny paid provider claim that cannot be verified *at the time of review* cannot be considered a valid claim for services provided.'" 1st Stop, 63 Va. App. at 271-72, 756 S.E.2d at 186 (quoting EDCD Manual, Chapter 6, p. 12) (alteration and emphasis in 1st Stop).

Pursuant to 12 Va. Admin. Code § 30-120-950(E), "[t]he provider shall maintain all records for each individual receiving personal care services." "The provider must correctly prepare and maintain the DMAS-90 form, the required form for providers of personal care [and respite care] services." 1st Stop, 63 Va. App. at 272, 756 S.E.2d at 186 (citing 12 Va. Admin.

- 4 -

Code § 30-120-950(E)).  The EDCD Manual goes further to specify that "[i]f an individual receives personal care and respite care services, one record may be maintained, but separate sections must be reserved for the documentation of the two services."  EDCD Manual, Chapter 4, p. 33.

> The Manual also provides that "[a]n accurately signed and dated DMAS-90 is the only authorized documentation of services provided for which DMAS will reimburse.  DMAS will not accept employee payroll time sheets in place of the DMAS-90."  EDCD Manual, Chapter 4, p. 36.  Chapter 6 of the EDCD Manual again notes that with regard to personal care and respite care services, "[o]nly DMAS-90s will be used by DMAS to verify services delivered and billed to DMAS.  No other documentation (e.g., time sheets) will be used for verification of services."  EDCD Manual, Chapter 6, p. 12.

1st Stop, 63 Va. App. at 272, 756 S.E.2d at 186.

"The EDCD Manual repeatedly warns Providers that they 'will be required to refund Medicaid' if they are found to have, among other things, 'failed to maintain records to support their claims.'"  Id. (quoting EDCD Manual, Chapter 2, p. 7).  In addition, the EDCD Manual states that

> [p]roviders will be required to refund payments made by Medicaid if they are found to have billed Medicaid contrary to law or regulation, *failed to maintain any record or adequate documentation to support their claims*, or billed for medically unnecessary services.

EDCD Manual, Chapter 6, p. 1 (emphasis added).  "The same chapter provides that 'EDCD Waiver services that fail to meet DMAS criteria are not reimbursable.'"  1st Stop, 63 Va. App. at 272, 756 S.E.2d at 187 (quoting EDCD Manual, Chapter 6, p. 14).  The Manual lists "[i]nsufficient documentation to support services billed" as non-reimbursable.  EDCD Manual, Chapter 6, p. 15.  "If services billed to and paid by DMAS are not documented on the DMAS-90, DMAS will require the provider to refund Medicaid."  EDCD Manual, Chapter 6, p. 12-13.

"Likewise, the regulations warn providers that 'noncompliance with DMAS policies and procedures may result in a retraction of Medicaid payment or termination of the provider agreement, or both.'" 1st Stop, 63 Va. App. at 272, 756 S.E.2d at 187 (quoting 12 Va. Admin. Code § 30-120-930(A)(17)).

DMAS, through PHBV Partners, LLP[1] ("PHBV" or the "auditor"), a contracting agent of DMAS, conducted a utilization review audit of personal and respite care services billed by Ablix for the period of January 1, 2010 through March 31, 2011.

By correspondence on July 12, 2012, Ablix was notified of the final results of the auditor's review, which identified overpayment in the amount of $197,636.48 for personal care services and $42,908.08 for respite care services. The auditor found that some of the reimbursed services were not supported by documentation in compliance with DMAS regulations and policies.

The audit findings assigned different error codes to identify Ablix's documentation deficiencies. This appeal only concerns Error Codes 901, 914, and 916. Error Code 901 was cited when Ablix's medical record did not contain the required Aide Record (DMAS-90 form) for the date(s) billed, and/or the hours billed did not match the DMAS-90 form in the recipient record. Error Code 914 was cited when the medical record notation included multiple service types (i.e., respite and personal care) within the same DMAS-90 form. Error Code 916 was applied to DMAS-90 forms that were provided with altered dates, times, and/or services performed.

On August 9, 2012, Ablix filed an appeal of the overpayment determinations with the DMAS Appeals Division as provided for under Code §§ 2.2-4019, 2.2-4021, and 32.1-325.1, as

---

[1] PHBV Partners, L.L.P., is now Myers & Stauffer, L.C.

well as DMAS Provider Appeals Regulations. On November 5, 2012, an informal fact-finding conference ("IFFC") was conducted. Based on additional information received during the informal appeal process, the auditor removed some of the identified errors, thereby reducing the personal care overpayment to $164,599.28 and the respite care overpayment to $33,417.96. The informal appeal decision was issued on January 29, 2013, and upheld the revised overpayment determinations. Thereafter, pursuant to Code § 2.2-4020, Ablix filed a timely notice of appeal challenging the informal appeal decision. In response to the notice of appeal, an evidentiary hearing ("formal hearing") commenced before Carol S. Nance, Esq. (the "hearing officer"). DMAS received the recommended decision ("RD") of the hearing officer on July 8, 2013. Both parties filed timely exceptions to the RD.

On August 27, 2013, the Director of DMAS issued a FAD accepting the hearing officer's RD and upholding the entirety of DMAS's revised overpayment finding.

Having exhausted all available administrative remedies, Ablix appealed to the circuit court. On March 28, 2014, the circuit court reversed the DMAS Director's FAD regarding Error Codes 901, 914, and 916 and entered a final order ruling that the Director's FAD was arbitrary and capricious as to those error codes.

On April 8, 2014, the Court of Appeals published 1st Stop Health Servs., 63 Va. App. 266, 756 S.E.2d 183. Based on the authority of 1st Stop, on April 14, 2014, DMAS filed a motion requesting the circuit court to vacate its March 28, 2014 final order and enter an order consistent with 1st Stop sustaining the Director's FAD. Included with the motion to vacate was its alternative motion to clarify final order, which restated and supplemented DMAS's argument made during the March 28, 2014 hearing regarding the circuit court's lack of jurisdiction regarding Error Code 901. DMAS filed a notice of hearing with its motions, setting the motions

for oral argument on April 17, 2014, the twentieth day after entry of the March 28, 2014 final order.

Counsel for Ablix failed to attend the April 17, 2014 hearing and failed to present any argument opposing DMAS's motions. After hearing oral argument, the circuit court entered an order denying DMAS's motions. DMAS then appealed to this Court.

## Analysis

### I.  1st Stop is Binding Authority

As a threshold issue, we first address DMAS's third assignment of error. DMAS asserts that the circuit court erred in failing to vacate or clarify its March 28, 2014 final order based on the new and directly on-point binding authority in 1st Stop.

#### *a.  Binding Authority*

The March 28, 2014 circuit court bench ruling found that DMAS was arbitrary and capricious in affirming overpayments based on the Director's findings that the DMAS-90 forms in Ablix's records either failed to distinguish between personal and respite care services or that the documents were altered. The error codes at issue were 901, 914, and 916. On April 8, 2014, this Court published 1st Stop, which addressed two error codes:  901 and 914.

"[A] decision of a panel of the Court of Appeals becomes a predicate for application of the doctrine of *stare decisis* until overruled by a decision of the Court of Appeals sitting *en banc* or by a decision of [the Supreme Court]."[2] Johnson v. Commonwealth, 252 Va. 425, 430, 478 S.E.2d 539, 541 (1996).

Ablix contends that this Court's opinion in 1st Stop is not binding precedent on the circuit court because 1st Stop was based upon the specific facts of that case, and the facts of this

_____

[2] 1st Stop petitioned the Supreme Court of Virginia for an appeal. That petition was denied on September 2, 2014.

case are distinguishable. In order to distinguish this case from 1st Stop, Ablix relies on its ability to verbally differentiate the forms for the two services during the audit. We find this argument without merit.

Verbal communication does not cure documentation deficiencies for DMAS-90 forms that had no objective identifier. Allowing verbal corrections to the forms subverts the purpose of requiring accurate, contemporaneous documentation. The record reflects that even though Ablix verbally informed the auditor how the forms were to be designated during the audit, Ablix also submitted during the audit process documents that often contradicted the initial verbal information as to which service the DMAS-90 form documented. Based on this contradictory information, it is apparent that Ablix's records did not contain DMAS-90 forms that objectively indicated which service they documented and that the information given during the audit was often inaccurate.

In this case, as in 1st Stop, DMAS assigned Error Code 914 for those DMAS-90 forms that were not differentiated in any way between personal or respite care services. DMAS based this documentation deficiency on DMAS's regulations and the EDCD Manual. In 1st Stop, as in this case, the provider acknowledged that some of the forms were not labeled personal or respite, but testified that the deficiency was later corrected. 1st Stop did not separate the personal and respite forms into separate files, and therefore commingled files were given to the auditor. Thus, the relevant facts of this case are indistinguishable, making 1st Stop binding authority on the circuit court.

### b. Retroactive Application

Ablix contends that even if 1st Stop is binding precedent, it cannot be applied retroactively to this case. As a general rule in Anglo-American jurisprudence, judicial decisions are to be applied retroactively. Dep't of Highways v. Williams, 1 Va. App. 349, 352, 338 S.E.2d

- 9 -

660, 662-63 (1986) (citing Cash v. Califano, 621 F.2d 626, 628 (4th Cir.1980)).  In addition, the party seeking prospective application has the "burden of 'presenting the necessary equitable predicate' for nonretroactivity."  Id. at 353, 338 S.E.2d at 663 (quoting Cash, 621 F.2d at 629).  Only under certain circumstances will a judicial decision be denied retroactive effect.  Id.

The three-factor test used in evaluating whether to deny retroactive effect to a judicial decision is the Chevron test.  See Harper v. Virginia Dep't of Taxation, 241 Va. 232, 401 S.E.2d 868 (1991) (citing Chevron Oil Co. v. Huson, 404 U.S. 97, 106 (1971)), vacated and remanded.[3]  Decisions are to be applied prospectively only if

> (1) the decision sought to be applied retroactively established a new principle of law either by overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed; (2) the retroactive application of the new rule would further retard its operation; and (3) substantial inequity would result if the new law were applied retroactively.

City of Richmond v. Blaylock, 247 Va. 250, 252, 440 S.E.2d 598, 599 (1994) (citing Harper, 241 Va. at 237-40, 401 S.E.2d at 871-73).

"Satisfaction of this first prong usually has been stated as the 'threshold test' for determining whether or not a decision should be applied prospectively only."  Harper, 241 Va. at 237, 401 S.E.2d at 871 (citing United States v. Johnson, 457 U.S. 537, 550 n.12 (1982)).

In reference to the first prong, Ablix contends that prior to the 1st Stop opinion, precedent from this Court had established that ordinary contract principles, including principles of material breach, apply to obligations of providers and DMAS in accordance with the terms of provider agreements.  Psychiatric Solutions of Va., Inc. v. Finnerty, 54 Va. App. 173, 190, 676 S.E.2d

---

[3] This case was reversed and remanded twice by the United States Supreme Court.  The final decision by the Virginia Supreme Court was in accordance with the United States Supreme Court's decisions that reversed the trial court and retroactively applied the law.  Harper v. Virginia Dep't of Taxation, 250 Va. 184, 462 S.E.2d 892 (1995).

358, 366-67 (2009). A material breach was defined in <u>Psychiatric Solutions</u> as "a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract." <u>Id.</u> at 190, 676 S.E.2d at 367 (citations omitted). Ablix further argues that neither at the time of the audit nor to date, did regulatory authority exist which required Ablix to separate the forms or otherwise designate on the DMAS-90 form whether the service being provided was personal or respite care; and thus, by verbally differentiating between personal care and respite care forms at the time of the audit, Ablix substantially complied with the provider agreement. Ablix contends that to retroactively apply such a standard, established for the first time in <u>1st Stop</u>, is inequitable and contrary to the <u>Chevron</u> test.

The agreement between DMAS and Ablix is governed by the law of contracts. <u>Culpeper Reg'l Hosp. v. Jones</u>, 64 Va. App. 207, 213, 767 S.E.2d 236, 239 (2015).

> We addressed substantial compliance in the context of [P]rovider [A]greements in <u>Psychiatric Solutions</u>. In that case, we held that "contract principles applied to the interpretation of the provider agreement and that, under settled principles of contract law, appellant would be entitled to payment if its noncompliance did not amount to a material breach of the agreement." <u>Psychiatric Solutions of Va., Inc.</u>, 54 Va. App. at 176, 676 S.E.2d at 359-60. We concluded that the provider did not substantially comply because, on those facts, its documentation deficiencies were material. <u>Id.</u> at 190-91, 676 S.E.2d at 367. We rejected the argument that the failures to document represented a "'trifling' technical deficiency in the documentation of those sessions." <u>See id.</u> at 191-92, 676 S.E.2d at 367. Instead, as a factual matter, DMAS established that the documentation failure "significantly impacted" the ability to provide care and, therefore, was a material breach. <u>See id.</u> at 192, 676 S.E.2d at 367-68.
>
> We were called upon to revisit the issue of substantial compliance in <u>1st Stop Health Services, Inc. [v. Department of Medical Assistance Services]</u>. We *again* concluded that the provider's documentation failures were material. 63 Va. App. at 270, 756 S.E.2d at 185. The provider's documentation in that case was "'abysmal' to the point [that] the auditor [could not] determine that certain payments were justified." <u>Id.</u> at 280, 756 S.E.2d at 190. We also pointed to the language of the Provider Agreement

- 11 -

and the applicable DMAS Manual to hold that the retraction of payment was a plainly authorized remedy for the provider's failure to maintain the required documentation. Id. at 281, 756 S.E.2d at 191.

Culpeper Reg'l Hosp., 64 Va. App. at 214, 767 S.E.2d at 240 (emphasis added). We further noted in 1st Stop that "'any paid provider claim that cannot be verified *at the time of review* cannot be considered a valid claim for services provided'" and "'[i]f services billed to and paid by DMAS are not documented on the DMAS-90, DMAS will require the provider to refund Medicaid.'" 1st Stop, 63 Va. App. at 278-79, 756 S.E.2d at 189-90 (emphasis in original) (quoting EDCD Manual, Chapter 6, p. 12-13). The documentation requirements are obligations that are an indispensable part of the agreement between providers and DMAS.

In this case, Ablix's documentation deficiencies were contrary to the express terms of the Provider Agreement. The documentation requirements were not unforeseen by Ablix. By not complying with the requirements, Ablix was in material breach of the Provider Agreement. Further, this is not a "new principle of law" which overruled "clear past precedent on which [Ablix] may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed." Blaylock, 247 Va. at 252, 440 S.E.2d at 599. Therefore, 1st Stop is binding precedent and will be applied retroactively, and thus, we need not address the second and third prongs of the Chevron test.

## II. Standard of Review

DMAS argues that the circuit court failed to apply the correct standard for judicial review of a final agency decision under the VAPA.

In ruling from the bench, the circuit court stated

> I'm not unmindful of the fact that *there are some principles when it comes to documenting the file and the rules apply* . . . . I think in this particular case as to these documents where we're talking Provider aide record [DMAS-90 form] and it's personal versus

- 12 -

respite or one said respite but it was really personal and so forth, looking at all the documentation here, saying I'm [DMAS] going to take $120,000, or whatever that figure happens to be, out and basing it on this here [indicating], with all due deference, and I can understand they're [DMAS] looking at it differently, *but I see it as being arbitrary and capricious and I so find it*. So as to that error and that error alone . . . I reverse . . . .

(Emphases added). The March 28, 2014 final order states that the Director's FAD "regarding error codes 901, 914, and 916 was arbitrary and capricious concerning the documentation contained in the Agency Record."

DMAS contends that the March 28 ruling erred by failing to defer to DMAS on a matter that falls within the agency's expert discretion without finding that DMAS's actions were a clear abuse of its delegated authority. Also, DMAS contends that the circuit court erroneously concluded that the Director's FAD was arbitrary and capricious without first ruling on whether substantial evidence in the record supports the Director's FAD. We agree and reverse the circuit court's ruling.

Under Code § 32.1-325.1, the DMAS director must adopt the recommended decision of the hearing officer "unless to do so would be an error of law or Department policy." The hearing officer's RD made factual findings that included witness testimony and demeanor, which particularly lie within the purview of the hearing officer. DMAS contends that the Director properly relied upon the hearing officer's determinations regarding the testimony of the witnesses and the case summary, which provided substantial evidence to support the RD. Specifically, the hearing officer's finding of fact #6 states:

"[a]lthough the provider has the burden of proof pursuant to Va. Code §§ 32.1-325.1(B) and 2.2-4020, the *provider presented no affirmative proof* to contraindicate DMAS's auditor's findings."

(Emphasis added). Based on the findings of fact and applicable law, the hearing officer concluded that "[t]he error codes assigned, for the reasons therefor, and the examples are

- 13 -

unrebutted by evidence from the provider[.]   [Ablix] has not borne its burden of proof to overturn the agency's initial determination."  Thus, the hearing officer recommended affirming the revised overpayment finding.  Because the RD contained no errors of law or Department policy, the Director's FAD adopted the RD as required by law.

Code § 2.2-4027 provides that "the reviewing court shall take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted."  E.g., Johnston-Willis Ltd. v. Kenley, 6 Va. App. 231, 242, 369 S.E.2d 1, 7 (1988).  As such, DMAS argues that judicial review of factual issues is limited to the determination of whether there is substantial evidence in the agency record to support the FAD.  "Substantial evidence" is "'such relevant evidence as a reasonable mind *might* accept as adequate to support a conclusion.'"  Virginia Real Estate Comm'n v. Bias, 226 Va. 264, 269, 308 S.E.2d 123, 125 (1983) (emphasis in original).  Thus, a reviewing court may reject agency findings of fact *only if*, after considering the record as a whole, it determines that a reasonable mind would necessarily come to a different conclusion. Id.

DMAS contends that the circuit court ignored the hearing officer's findings of fact, which were affirmed in the Director's FAD, and substituted its own judgment in holding that the Director's FAD was arbitrary and capricious.

The circuit court ruling does not include any finding that DMAS's actions were a clear abuse of delegated authority, nor does it include a finding that there was insubstantial evidence in the agency record to support the Director's FAD.  Without these findings, there cannot be a conclusion that DMAS's actions were arbitrary and capricious.  Therefore, the circuit court failed to apply the correct standard of review and erred in finding the Director's FAD arbitrary and capricious regarding Error Codes 901, 914, and 916.

- 14 -

Although we find that the circuit court failed to apply the correct standard of review, we note that the Director's FAD is supported by substantial evidence in the record.

*a. Error Code 901*

Error Code 901 was cited when Ablix's medical record did not contain the required DMAS-90 form for the date(s) billed, and/or the hours billed did not match the DMAS-90 form in the recipient record. For the purposes of this error code, the Department counted hours in accordance with the explanations submitted by Ablix's representatives during the audit, namely to consider documentation as personal care services when the form did not delineate the service type and to consider all other DMAS-90 forms as the service type documented on the form. In failing to allege the Director's FAD regarding Error Code 901 was arbitrary and capricious, Ablix failed to bring this issue within the circuit court's jurisdiction under VAPA because it failed to designate and demonstrate this alleged error of law. Moreover, no argument was made during the March 28, 2014 hearing pertaining to the calculation of hours on the DMAS-90 forms and the hours Ablix billed to DMAS. By failing to present any argument on this error code, Ablix could not meet its burden of proof regarding Error Code 901. Accordingly, the circuit court erred by ruling on an issue not within its jurisdiction. [4]

---

[4] We note, however, that even if this issue was properly before the circuit court, the evidence was sufficient to conclude the Director's FAD regarding Error Code 901 was not arbitrary and capricious. 12 Va. Admin. Code § 30-120-930(A)(11) expressly requires providers to "maintain and retain business and professional records sufficient to document fully and accurately the nature, scope, and details of the services provided." Accepting the information created by Ablix following the audit would have required DMAS to ignore this regulation. Although Ablix claimed that it was "clarifying" the service type, it was essentially attempting to change the service type. This is tantamount to an admission that it did not maintain documentation to support the services billed. As the hearing officer stated, "[f]indings in an audit cannot be altered after the fact by changing the materials to make them appear compliant. An audit's findings direct future actions and do not amend past actions."

- 15 -

### b. *Error Code 914*

There were admissions from both of Ablix's witnesses at the formal hearing that the DMAS-90s failed to consistently reflect the type of service being provided. Each witness asserted that the auditor was told that if the DMAS-90 did not have "personal" or "respite" circled or underlined, or the DMAS-90 was not on green paper, then it was for personal care "most of the time." Thus, Error Code 914 was cited for forms that were not: (1) clearly marked as personal care or "PC," (2) clearly marked as respite care or "R," or (3) not on a green sheet. DMAS-90s that were marked as both personal and respite were assigned Error Code 914. There were also instances where two copies of the same DMAS-90 were submitted – one marked "personal" and one marked "respite." It is clear that the services were not separately maintained or marked to clearly delineate which services were being rendered. Therefore, the evidence was sufficient to conclude the Director's FAD regarding Error Code 914 was not arbitrary and capricious.

### c. *Error Code 916*

For instances in which a DMAS-90 form was labeled respite during the auditor's on-site visit and was later switched to personal care, the hours on the form were not entered on the personal care overpayment log and Error Code 916 was applied because the document was altered. An Ablix witness testified at the formal hearing that the changes to the forms were in response to the audit. The hearing officer noted that the EDCD Manual states the "provider is expected to use the findings of the audit to comply in the future," and "[r]ecords that have been reviewed shall not be altered to meet compliance issues." Based on the EDCD Manual, Ablix's documentation, and the testimony of Ablix's witness, the hearing officer determined that the DMAS-90 forms had been altered in response to the audit so that they appeared to be in compliance and that such action was directly contrary to the policy set out in the EDCD Manual.

We find that substantial evidence in the record supports the Director's FAD regarding Error Code 916.

For the reasons stated, we reverse the circuit court's ruling that the Director's FAD was arbitrary and capricious without first ruling on whether substantial evidence in the record supports the Director's FAD.

## III.  Attorneys' Fees

Code § 2.2-4030 limits the amount of any award of attorneys' fees in a civil case incurred for the judicial proceedings.  The statute also requires that the party bringing the judicial action under VAPA must substantially prevail and that the agency's position is not substantially justified.  DMAS's position in assessing Error Codes 901, 914, and 916 was substantially justified based on the reasonable interpretation by DMAS of the regulations and policies upon which those error codes are based, which is supported by this Court's similar interpretation in 1st Stop.  Therefore, we affirm the trial court's denial of attorneys' fees to Ablix in this case.

## Conclusion

In summary, we find that the circuit court erred in failing to apply the correct standard for court review of an agency decision and in ruling that the DMAS Director's FAD was arbitrary and capricious with regard to Error Codes 901, 914, and 916.  We further find that the circuit court erred in failing to vacate its final order in light of the decision in 1st Stop.  1st Stop constitutes binding authority and shall be applied retroactively.  Finally, we affirm the decision of the trial court denying attorneys' fees to Ablix.

Affirmed in part;
reversed and remanded
in part.