Present: Carrico, C.J., Compton, Stephenson, Whiting[2], Lacy, Hassell, and Keenan, JJ.

HENRY HARPER, ET AL.

v. Record No. 940326

VIRGINIA DEPARTMENT OF TAXATION

OPINION BY
CHIEF JUSTICE HARRY L. CARRICO
September 15, 1995

LAWRENCE E. LEWY, ET AL.

v. Record No. 940411

VIRGINIA DEPARTMENT OF TAXATION

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Donald H. Kent, Judge


This appeal involves the interpretation of a tax-refund statute, Code § 58.1-1826, which provides in pertinent part as follows:

> If the court is satisfied that the applicant is erroneously or improperly assessed with any taxes, the court may order that the assessment be corrected. If the assessment exceeds the proper amount, the court may order that the applicant be exonerated from the payment of so much as is erroneously or improperly charged, if not already paid and, if paid, that it be refunded to him. If the assessment is less than the proper amount, the court shall order that the applicant pay the proper taxes . . . .

The question for decision is whether the trial court erred in denying refunds for taxes erroneously or improperly collected for pension income received by federal retirees. The question is presented against the following factual and legal background.

On March 28, 1989, in <u>Davis v. Michigan Dept. of Treasury</u>,

_____

[2]Justice Whiting participated in the hearing and decision of this case prior to the effective date of his retirement on August 12, 1995.

489 U.S. 803, the Supreme Court of the United States held that a Michigan statute which defined taxable income in a manner exempting from taxation the pension income of retired state employees, but not the pension income of retired federal employees, violated the doctrine of intergovernmental tax immunity embodied in the supremacy clause of the United States Constitution. Id. at 817. The Court stated that Michigan "having conceded that a refund is appropriate in these circumstances," the appellant "is entitled to a refund" to the extent he "has paid taxes pursuant to this invalid tax scheme." Id.

Virginia similarly exempted the pension income of retired state and local government employees, but not the pension income of retired federal employees. Following Davis, the Virginia General Assembly repealed the exemption for state and local employees, Acts 1989, Spec. Sess. II, c. 3, but made no provision at the time for the relief of federal retirees for the taxes they had paid prior to Davis.[3]

Also in 1989, Henry Harper and Lawrence and Miriam Lewy,

_____

[3]In 1994, the General Assembly enacted the Federal Retirees Settlement Program. Acts 1994, Spec. Sess. I, c. 5. This legislation authorized the Tax Commissioner "to make settlement payments to taxpayers to resolve disputed claims for refunds of taxes paid with respect to retirement or pension benefits received from a federal retirmenet system . . . for any taxable year beginning on or after January 1, 1985, and ending on or before December 31, 1988." The legislation provided that "[t]he taxpayers shall be given the option of whether they want to participate in the settlement" and "[t]hose who do not want to participate will have the option of having their entitlement to refunds determined by existing litigation or filing suit themselves." The Harper taxpayers have exercised the latter option and seek to have their entitlement to refunds determined in the present litigation.

along with numerous other federal pensioners, brought proceedings in several Virginia circuit courts seeking refunds of taxes paid since 1985 on income from civil service annuities or pensions for federal employment or military duty. The several proceedings were consolidated into one action in the Circuit Court of the City of Alexandria, where the matter has been litigated, and the case is before this Court for the third time. The Circuit Court of the City of Alexandria will be referred to hereinafter as the trial court; the plaintiffs in the consolidated action will be referred to collectively as Harper or the Harper taxpayers; and the Virginia Department of Taxation will be referred to as the Department.

In the initial proceeding below, the trial court ruled that Davis should be applied only prospectively and denied the refunds sought by Harper. We awarded Harper an appeal and affirmed the judgment of the trial court, holding that Davis should not "be applied retroactively" and that "state law does not require tax refunds, but to the contrary, grants prospective-only application to decisions that invalidate a taxing scheme." Harper v. Virginia Dept. of Taxation, 241 Va. 232, 243, 401 S.E.2d 868, 874 (1991).

The Supreme Court granted certiorari, vacated our judgment, and remanded the case "for further consideration in light of James B. Beam Distilling Co. v. Georgia, [501 U.S. 529, 540 (1991) (error to refuse to apply rule of federal law retroactively after case announcing rule has already done so)]." Harper v. Virginia Dept. of Taxation, 501 U.S. 1247 (1991) (Harper I). Upon remand, we reaffirmed "our prior decision in all respects," stating that

"having reconsidered our . . . decision in light of <u>Beam</u>, we conclude that nothing articulated in <u>Beam</u> requires a result different from that reached in our prior decision." <u>Harper v. Virginia Dept. of Taxation</u>, 242 Va. 322, 327, 410 S.E.2d 629, 632 (1991).

The Supreme Court again granted certiorari. <u>Harper v. Virginia Dept. of Taxation</u>, 504 U.S. 954 (1992). Disagreeing with this Court's treatment of the retroactivity issue, the Court stated that its response in <u>Davis</u> to Michigan's concession that a refund was appropriate "constituted a retroactive application of the rule announced in <u>Davis</u> to the parties before the Court." <u>Harper v. Virginia Dept. of Taxation</u>, 509 U.S. ___, 113 S.Ct. 2510, 2518 (1993) (<u>Harper II</u>). Therefore, the Court held, "the Supreme Court of Virginia must apply <u>Davis</u> in [Harper's] refund action." <u>Id.</u>

The Court reversed our judgment, but did not enter judgment for the Harper taxpayers because, it said, "federal law does not necessarily entitle them to a refund." 509 U.S. at ___, 113 S.Ct. at 2519. Rather, the Court stated, "the Constitution requires Virginia 'to provide relief consistent with federal due process principles.'" <u>Id.</u> (quoting <u>American Trucking Assns., Inc. v. Smith</u>, 496 U.S. 167, 181 (1990)). But, the Court explained, "'a State found to have imposed an impermissibly discriminatory tax retains flexibility in responding to this determination.'" <u>Harper II</u>, 509 U.S. at ___, 113 S.Ct. at 2519 (quoting <u>McKesson Corp. v. Division of Alcoholic Beverages & Tobacco</u>, 496 U.S. 18, 39-40 (1990)).

The Court stated further that "[i]f Virginia 'offers a meaningful opportunity for taxpayers to withhold contested tax assessments and to challenge their validity in a predeprivation hearing,' the 'availability of a predeprivation hearing constitutes a procedural safeguard . . . sufficient by itself to satisfy the Due Process Clause.'" Harper II, 509 U.S. at ___, 113 S.Ct. at 2519 (quoting McKesson, 496 U.S. at 38 n.21). "On the other hand," the Court continued, "if no such predeprivation remedy exists, 'the Due Process Clause . . . obligates the State to provide meaningful backward-looking relief to rectify any unconstitutional deprivation.'" Harper II, 509 U.S. at ___, 113 S.Ct. at 2519 (quoting McKesson, 496 U.S. at 31). Finally, the Court said that "[i]n providing such relief, a State may either award full refunds to those burdened by an unlawful tax or issue some other order that 'create[s] in hindsight a nondiscriminatory scheme.'" Harper II, 509 U.S. at ___, 113 S.Ct. at 2519-20 (quoting McKesson, 496 U.S. at 40).

The Court remanded the case to this Court "for further proceedings not inconsistent with [its] opinion." Harper II, 509 U.S. at ___, 113 S.Ct. at 2520; Lewy v. Virginia Dept. of Taxation, ___ U.S. ___, 113 S.Ct. 3024 (1993). In turn, we remanded the matter to the trial court "for further proceedings not inconsistent with the views expressed in the written opinion of the Supreme Court of the United States [in Harper II]."

The trial court ruled that Virginia does provide a taxpayer a meaningful predeprivation opportunity to challenge a tax, sufficient to satisfy due process, in the form of a declaratory

judgment proceeding brought under Code § 8.01-184.  The trial court ruled further that, assuming there had been no due process violation, Virginia's refund statute, Code § 58.1-1826, did not mandate refunds to the taxpayers in the present case because the statute vests courts with discretion in determining whether refunds should be ordered.  Accordingly, the trial court denied Harper's request for refunds.

We awarded Harper an appeal.  Harper argues that because a court exercises discretion in determining whether to entertain requests for declaratory judgments, Haughton v. Lankford, 189 Va. 183, 198, 52 S.E.2d 111, 117 (1949), Virginia's declaratory judgment proceeding does not provide a meaningful opportunity for taxpayers to withhold contested tax assessments and to challenge their validity in a predeprivation hearing.

Hence, Harper asserts, under McKesson and Harper II, due process obligates Virginia to provide meaningful backward-looking relief, in the form of a clear and certain remedy, to rectify an unconstitutional assessment of taxes.  Harper says that we have interpreted language in the statutory ancestor of Code § 58.1-1826 as mandating the refund of taxes illegally collected and, therefore, that § 58.1-1826 provides the backward-looking relief due process requires.  Accordingly, Harper concludes, it was error for the trial court to refuse to apply § 58.1-1826 and order refunds in this case.

The Department argues on the other hand that Virginia's declaratory judgment proceeding provided the Harper taxpayers an adequate and meaningful predeprivation opportunity to challenge

the validity of the taxes in dispute, yet they failed to avail themselves of the opportunity.  Hence, the Department concludes, the requirements of due process are satisfied, and Virginia is not required to provide any backward-looking relief in the form of refunds.

With respect to Code § 58.1-1826, the Department contends that use of the word "may" in the statute denotes the exercise of discretion in the ordering of refunds.  The Department makes this argument:

> If the assessment is <u>below</u> the proper amount, the court "<u>shall</u>" order the payment of the taxes.  The court has no discretion.  If the assessment is <u>above</u> the proper amount, the court "<u>may</u>" order the refunds of the taxes.  The court is clothed with discretion in regard to refunds.  There is no other explanation for the legislature's choice of "shall" and "may" within § 58.1-1826.

Hence, the Department concludes, § 58.1-1826 "simply cannot be read as a legislatively mandated 'entitlement' to refunds," and the trial court did not err in refusing to order refunds.

Finally, the parties debate the effect of a decision of the Supreme Court announced after the trial court decided the present case.  In <u>Reich v. Collins</u>, 513 U.S. ___, 115 S.Ct. 547 (1994), Reich, a retired military officer, filed suit following the Supreme Court's decision in <u>Davis</u> seeking a refund from the State of Georgia of income taxes paid on his military pension.  Georgia's refund statute provided that "[a] taxpayer shall be refunded any and all taxes or fees which are determined to have been erroneously or illegally assessed and collected from him." 513 U.S. at ___, 115 S.Ct. at 549.

The Georgia trial court denied Reich's request for a refund, and the Supreme Court of Georgia affirmed, holding that the refund statute did not "apply to 'the situation where the law under which the taxes are assessed and collected is itself subsequently declared to be unconstitutional or otherwise invalid.'" Id. (quoting Reich v. Collins, 422 S.E.2d 846, 849 (Ga. 1992)). Reich petitioned for certiorari, but while his petition was pending, the United States Supreme Court decided Harper II. The Court then remanded Reich's case to the Supreme Court of Georgia for further consideration in light of Harper II. 513 U.S. at ___, 115 S.Ct. at 550.

On remand, the Supreme Court of Georgia again denied Reich's request for a refund, this time holding that Georgia's predeprivation remedies were ample to provide a "'meaningful opportunity[, sufficient for due process purposes,] for taxpayers to withhold contested tax assessments and to challenge their validity.'" Reich v. Collins, 437 S.E.2d 320, 321 (Ga. 1993) (quoting Harper II, 509 U.S. at ___, 113 S.Ct. at 2519). Reich again petitioned for certiorari, and the writ was granted. The Supreme Court reversed, saying that, under McKesson, a state has "the flexibility to maintain an exclusively predeprivation remedial scheme, so long as that scheme is 'clear and certain.'" Reich, 513 U.S. at ___, 115 S.Ct. at 550. Due process, the Court continued, also allows a state "to maintain an exclusively postdeprivation regime . . . or a hybrid regime." Id. And, the Court declared, a state "is free as well to reconfigure its remedial scheme over time, to fit its changing needs." Id.

> But, the Court said,
> what a State may <u>not</u> do, and what Georgia did here, is to reconfigure its scheme, unfairly, in <u>midcourse</u> -- to "bait and switch," as some have described it. Specifically, in the mid-1980's, Georgia held out what plainly appeared to be a "clear and certain" postdeprivation remedy, in the form of its tax refund statute, and then declared, only after Reich and others had paid the disputed taxes, that no such remedy exists.

<u>Id.</u>

The Department argues that <u>Reich</u> is inapplicable here. The Department points out the mandate in the Georgia statute that "[a] taxpayer <u>shall be refunded</u> any and all taxes . . . which are determined to have been erroneously or illegally assessed and collected." (Emphasis added.) The Department then says that "[d]espite this mandatory language, . . . the Georgia Supreme Court ruled, apparently for the first time and in conflict with its own precedent, that its statute would not apply to cases 'where the law under which the taxes are assessed and collected is itself subsequently declared to be unconstitutional.'" It was this ruling, the Department states, that prompted the United States Supreme Court in <u>Reich</u> to use the "bait and switch" terminology and to note that "no reasonable taxpayer would have read the 'illegally collected' statutory language to exclude constitutional decisions."

"Unlike the Georgia law," the Department maintains, "the Virginia statute provides in plain language that 'the court <u>may</u> order that any amount which has been improperly collected' be refunded to the taxpayer." The Department asserts that "[n]o reasonable taxpayer can claim he was misled by the clear and

unequivocal language of this discretionary statute." Furthermore, the Department says, "unlike the Georgia Court, this Court has not 'reconfigured' Virginia law by adding a judicial gloss to the clear language of § 58.1-1826, or by failing to follow its own precedent." Hence, the Department concludes, "[i]t is clear that Reich has no application and, in fact, is completely distinguishable from the litigation in Virginia."

We disagree with the Department. We think Reich is applicable and cannot be distinguished. If, as Harper contends, we have previously interpreted the statutory ancestor of Code § 58.1-1826 as mandating a refund of taxes illegally collected but we now adopt, for the first time, the Department's view that a refund is discretionary, we certainly will have done what the Supreme Court said in Reich a state may not do, that is "to reconfigure its scheme, unfairly, in midcourse -- to 'bait and switch.'" 513 U.S. at ___, 115 S.Ct at 550.

Harper is correct in saying that we have interpreted the statutory ancestor of Code § 58.1-1826 as mandating the refund of taxes illegally collected. Hotel Richmond Corp. v. Commonwealth, 118 Va. 607, 88 S.E. 173 (1916), involved an interpretation of § 568 of the Code of 1904. The earlier statute provided as follows:

> If the court be satisfied that the applicant is erroneously assessed with any taxes, and that the erroneous assessment was not caused by the failure or refusal of the applicant to furnish a list of his property, real and personal, to the commissioner, on oath, as the law requires; or that the applicant is erroneously charged with a license tax, and that the erroneous assessment was not caused by the failure or refusal of the applicant to furnish the commissioner, on oath, with the necessary information, as required by

law, in either case the court <u>may</u> order that the assessment be corrected.  If the assessment exceeds the proper amount, the court <u>may</u> order that the applicant be exonerated from the payment of so much as is erroneously charged, if not already paid, and if paid, that it be refunded to him.  If the assessment be less than the proper amount, the court <u>shall</u> order that the applicant pay the proper taxes.

(Emphasis added.)  The taxpayer, Hotel Richmond, sought refund of a license tax it claimed had been erroneously assessed.  The Commonwealth defended on the ground that the tax had been paid voluntarily.  Responding to the Commonwealth's defense, this Court made the following statements:

[W]e [do not] question the well-settled doctrine that a voluntary payment of money, under a mistake of law, lays no foundation for an action to recover back the money so paid.  This principle, however, has, in our opinion, no application to a proceeding, like the present, under a statute which expressly provides that, when certain conditions are complied with, the citizen <u>shall</u> be refunded a tax paid by him which was erroneously assessed against him.

118 Va. at 610, 88 S.E. at 174.  (Emphasis added.)

The statute in plain terms prescribes the conditions upon which the erroneous assessment <u>shall</u> be refunded, and it nowhere intimates that if the applicant for relief has paid the tax voluntarily he cannot have the same refunded. . . .   The plaintiffs in error have complied with every requirement of the statute, and are, therefore, <u>entitled to have the erroneous license tax paid by them . . . refunded</u>.

<u>Id.</u> at 610-11, 88 S.E. at 174.  (Emphasis added.)

The cases . . . cited in support of the contention that a tax voluntarily paid cannot be recovered back . . . are, in our opinion, not in conflict with the conclusion reached in the present case, where the erroneous tax which has been paid is restored to the aggrieved citizen by virtue of a plain statute, which provides that it <u>shall</u> be refunded.

<u>Id.</u> at 611, 88 S.E. at 174.  (Emphasis added.)

The Department dismisses <u>Hotel Richmond</u> as "not on point" because the issue in the case was whether voluntary payment of the license tax defeated the right to a refund, not whether a refund was mandatory. However, the language in the opinion explaining the mandatory nature of the refund statute was part of the rationale employed to reach the conclusion that voluntary payment does not defeat the right to a refund. In other words, had the Court considered refunds discretionary and not mandatory, the clear implication is that voluntary payment would have defeated the right to a refund. Hence, the language dealing with the mandatory nature of the refund statute was necessary to the Court's decision, and the case is "on point."

It is obvious that the Court in <u>Hotel Richmond</u> treated the word "may" in the refund statute as "shall." This treatment was in accordance with the rule that "'[t]he word "may" is <u>prima facie</u> permissive, importing discretion, but the courts construe it to be mandatory when it is necessary to accomplish the manifest purpose of the Legislature.'" <u>Caputo v. Holt</u>, 217 Va. 302, 305 n.*, 228 S.E.2d 134, 137 n.* (1976) (quoting <u>Chesapeake & O. Ry. Co. v. Pulliam</u>, 185 Va. 908, 916, 41 S.E.2d 54, 58 (1947)). <u>See</u> <u>also</u> <u>Pearson v. Board of Supervisors</u>, 91 Va. 322, 333-34, 21 S.E. 483, 485 (1895).

The Department says that "[t]he manifest purpose of § 58.1-1826 is to grant the courts the authority to deny refunds in the appropriate case." We disagree. We think § 58.1-1826 was enacted for a different purpose:

> It must be remembered . . . that the [refund] statute is remedial, and that its avowed purpose is to provide an

> expeditious and inexpensive remedy for relief against taxes which have been erroneously assessed or collected, and that remedial statutes are not strictly construed, but are given a liberal construction with the view of advancing the remedy sought to be applied in accordance with the true intent and purpose of the legislature.

Commonwealth v. Smallwood Memorial Inst., 124 Va. 142, 144, 97 S.E. 805, 806 (1919). It was to accomplish the manifest purpose of the legislature that this Court found it necessary in Richmond Hotel to give mandatory effect to the word "may" in § 568 of the Code of 1904.

In practical and legal effect, the language of § 568 is identical to the wording of present § 58.1-1826, even to the extent that the two enactments employ both "may" and "shall." Yet, this Court in Hotel Richmond had no difficulty in giving mandatory effect to both words in interpreting § 568. The case has remained unchanged as the law of this Commonwealth for almost eighty years. To avoid doing what Reich teaches a state may not do, that is, to "bait and switch" by reconfiguring its tax scheme midcourse, we reaffirm Hotel Richmond's treatment of the word "may" in the tax refund statute as mandatory.

This leaves for decision the question of Reich's effect upon the Department's argument that Virginia's declaratory judgment action provides taxpayers an adequate and meaningful opportunity to withhold contested tax assessments and to challenge their validity in a predeprivation hearing and that the Commonwealth is not required, therefore, to provide backward-looking relief in the form of refunds. The Department says that the Supreme Court in Reich "did not even address the issue of predeprivation remedies."

However, the Department overlooks this important passage from the

Reich opinion:

> [T]he Georgia Supreme Court's reliance on Georgia's predeprivation procedures was entirely beside the point (and thus error), because even assuming the constitutional adequacy of these procedures -- an issue on which we express no view -- no reasonable taxpayer would have thought that they represented, in light of the apparent applicability of the refund statute, the exclusive remedy for unlawful taxes.

513 U.S. at ___, 115 S.Ct. at 550.

Given the clear applicability of Code § 58.1-1826, we are of opinion that no reasonable taxpayer would have thought that a declaratory judgment proceeding, even assuming its constitutional adequacy -- an issue upon which we express no view -- represented the exclusive remedy for relief from unlawful taxes in Virginia. Accordingly, it would be "entirely beside the point (and thus error)," Reich, 513 U.S. at ___, 115 S.Ct. at 550, for this Court to place any reliance in this case on the Commonwealth's declaratory judgment procedure as a means to avoid providing meaningful backward-looking relief in the form of refunds.

Alternatively, the Department argues that in addition to the predeprivation remedy of declaratory judgment, the Harper taxpayers had a second predeprivation remedy available to them in the form of an administrative procedure provided by Code §§ 58.1-1821 and -1822. The Department prays that, if we do not affirm the judgment of the trial court, we remand the case for a resolution of the sufficiency of the administrative remedies. However, any reliance upon these remedies would be beside the point, and thus error, for the same reason that any reliance upon

the declaratory judgment procedure would be beside the point, and thus error.  In view of the clear applicability of Code § 58.1-1826, no reasonable taxpayer would have thought that the administrative procedure represented the exclusive remedy for relief from unlawful taxes.  Therefore, we deny the Department's prayer.

Finally, the Department argues that, by authorizing the refund of only so much of the amount paid as is erroneous or improper, Code § 58.1-1826 "commands that any refund ordered must be limited to the amount necessary to correct the error (here, the difference between the amount that plaintiffs actually paid in taxes and the amount they would have paid had the state also taxed state pensioners, to be determined in a subsequent evidentiary hearing)."  The Department requests that we remand the case for such a hearing.

We decline the request.  Harper II teaches that "[i]n providing [meaningful backward-looking] relief, a State may either award full refunds to those burdened by an unlawful tax or issue some other order that 'create[s] in hindsight a nondiscriminatory scheme.'"  509 U.S. at ___, 113 S.Ct. at 2519-20 (quoting McKesson, 496 U.S. at 40).  The courts are powerless to impose a tax on the state employees whose pension income was exempt prior to Davis.  To reduce the amount of the refunds due the Harper taxpayers and thus relieve them of only a portion of their unlawful tax burden, while leaving the state pensioners entirely untaxed for the pre-Davis period, would only create another discriminatory scheme.

Giving <u>Reich</u> its full effect, we reach the inevitable conclusion that the Harper taxpayers are entitled to full refunds. Accordingly, we will reverse the judgment of the trial court and enter final judgment in favor of the Harper taxpayers directing that the amounts unlawfully collected from them be refunded, with interest as provided in Code § 58.1-1833.

<u>Reversed and final judgment</u>.