PRESENT:  All the Justices

STAFFORD COUNTY, ET AL.

v.  Record No. 191662

OPINION BY
JUSTICE STEPHEN R. McCULLOUGH
April 1, 2021

D.R. HORTON, INC., ET AL.


FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Charles S. Sharp, Judge

In this appeal we consider the interplay of two statutes:  Code § 15.2-2232, which

requires a developer to submit certain plans for review by a locality's planning commission, and

Code § 15.2-2286.1, which governs cluster developments.[1]  The circuit court held that the cluster

development plans submitted by two developers were not subject to planning commission review

under Code § 15.2-2232.  We disagree.  Therefore, we will reverse the judgment below and

remand the case for a review of these plans under Code § 15.2-2232 by the Stafford County

Planning Commission.

BACKGROUND

I.        CODE § 15.2-2232 AND THE COMPREHENSIVE PLAN.

Stafford County has adopted a comprehensive plan for land use, as required by Code

§ 15.2-2232.  The comprehensive plan shows public facilities, such as sewer lines.  In the

language of the Code, these public facilities are known as "features."  Stafford County's

comprehensive plan also designates an "Urban Services Area" where the County will provide

public water and sewer service.  The comprehensive plan controls "the general or approximate

---

[1] Cluster development refers to zoning that "favors planned-unit development by allowing a modification in lot size and frontage requirements under the condition that other land in the development be set aside for parks, schools, or other public needs," including open space preservation.  *See* Black's Law Dictionary 1757 (9th ed. 2009).

location, character and extent of each feature shown on the plan." Code § 15.2-2232(A). A developer seeking to build a "feature" not shown on the comprehensive plan must petition the planning commission for approval. *Id.* The Planning Commission must then determine whether the request for extension of this feature is "substantially in accord" with the comprehensive plan. *Id.*

II.     THE DEVELOPERS INITIALLY PROPOSED TO BUILD CONVENTIONAL SUBDIVISIONS.

Two real estate developers, D.R. Horton, Inc. and Metts, L.C., whom we will refer to collectively as "the Developers," own properties in Stafford County. Approximately forty percent of each parcel is located within the Stafford County Urban Services Area, which is the area that Stafford County has designated for the provision of public water and sewer service. In other words, approximately sixty percent of both parcels is located outside of the Urban Services Area.

In 2005 and 2007, the Developers submitted preliminary subdivision plans to the Planning Commission in which they requested extension of the public sewer to the unserved areas of the properties. D.R. Horton's proposal included 145 lots. Metts' proposal included 24 lots. These plans were for conventional, non-clustered, subdivisions. The Planning Commission determined that both of the requested extensions were in compliance with the comprehensive plan and unconditionally approved the extensions. The Planning Commission's resolutions stated that "*this request* for an extension of sewer service outside of the County's designated Urban Service[s] Area . . . be and it hereby is found to be in compliance with the Comprehensive Plan for Stafford County." (Emphasis added.) Both developers decided not to proceed with the construction of these conventional subdivisions.

2

III.     IN 2012, THE DEVELOPERS PROPOSE TO BUILD CLUSTER DEVELOPMENTS.

Code § 15.2-2286.1 encourages high-growth localities to adopt ordinances regarding higher density "cluster" developments. Code § 15.2-2286.1(C) allows localities two options. They can either approve cluster developments administratively or approve a development by a special exception, special use permit, conditional use permit, or rezoning. Code § 15.2-2286.1(C). Stafford County enacted Section 22-270 of the Stafford County Code providing for administrative approval of cluster plans by Planning Department staff based upon the standards, conditions, and criteria for cluster developments in its subdivision ordinance.

In 2011, the General Assembly amended Code § 15.2-2286.1(B) to provide that a locality "shall not prohibit the extension of water or sewer" service, so long as "the cluster development is located within an area designated for water and sewer service by [the locality]." *Id.*; 2011 Va. Acts ch. 549. In 2012, the Developers submitted concept plans which reconfigured their previously approved subdivisions into cluster subdivisions. These concept plans relied on the Planning Commission's prior extension of public water and sewer to the properties. Each plan also proposed an increased number of lots: D.R. Horton's plan proposed an additional 52 lots, while Metts' plan proposed an additional 21 lots. Thus, under the developments proposed in 2012, the number of homes was increased by approximately one third (145 lots to 196 lots) by Horton and almost 50 percent (24 to 45) by Metts. The plans also proposed different street configurations and water and sewer layouts.

Upon review of the concept plans, the County Planning Department advised the Developers that they would need to undergo another comprehensive plan compliance review, in accordance with Code § 15.2-2232, because their new plans "significantly deviate[d]" from the previously approved plans. Additionally, the Planning Department took the position that the

3

previously-approved extension of water and sewer services was limited to the specific subdivision plans approved in 2005 and 2007 and did not operate to extend the area designated for water and sewer service generally. The Planning Department also noted that its comprehensive plan had been updated significantly in 2010, necessitating a new comprehensive plan review to determine whether the proposed cluster developments were in compliance with the updated comprehensive plan. The Developers refused to comply with the comprehensive plan review requirement, contending that their cluster subdivision plans were permitted by right and the County could not condition their approval on another comprehensive plan review.

The Developers appealed the Planning Department's decision to the Board of Supervisors. The Board of Supervisors upheld the Planning Department's decision.

IV.    THE DEVELOPERS FILE SUIT AND THE CIRCUIT COURT RULES IN THEIR FAVOR.

In response to the action of the Board of Supervisors, the Developers then separately filed "Verified Petition[s] for Writ[s] of Mandamus and Other Relief." The Developers sought writs of mandamus requiring the County to approve the plans and writs of prohibition preventing the County from ordering a comprehensive plan review. Finally, the Developers sought a judicial declaration that the County must approve the plans and that its refusal to do so was unreasonable. The Developers' cases were consolidated for trial, which took place on July 2 and 3, 2014.

At trial, the Developers introduced expert testimony which tended to show that there were only minor differences between the sewer layouts approved in the 2005 and 2007 plans and the sewer layouts proposed in the 2012 plans. Their expert testified that the 2012 plans actually reduced the amount of new sewer construction needed to serve the projects. By contrast, the County emphasized that even if the 2012 plans involved less sewer construction, they actually increased the demand on the County's water and sewer facilities because the plans proposed

4

additional lots to be serviced compared to the previously approved plans.  The County also argued that a comprehensive plan review was especially necessary since the properties would need to utilize a pumping station that was already over capacity.  At the conclusion of trial, the circuit court requested post-trial briefing and took the matter under advisement.

For reasons that are not clear from the record, the circuit court did not rule until approximately five years later, on August 16, 2019.  The circuit court concluded that the provisions of Code § 15.2-2286.1 "unambiguously [directed] the implementation of a cluster development by right, administratively and without a public hearing."  The circuit court recognized that those provisions were "obvious[ly]" inconsistent with the requirements of Code § 15.2-2232, and that although the General Assembly could have incorporated Code § 15.2-2232's requirements into Code § 15.2-2286.1, it chose not to.  Finding the statutes irreconcilable, it determined that the more specific statute, Code § 15.2-2286.1, should control.  The circuit court further explained that, even if Code § 15.2-2232 did control, the developers would be entitled to relief under Code § 15.2-2232(D) because they were identified within a prior-approved submission, and therefore exempt from review.  Additionally, the court found that "the proposed features . . . were in compliance with the comprehensive plan" because they were "approved" and "were effectively made part of the adopted [comprehensive] plan."  Finally, the court rejected the County's argument that the plans' differences necessitated additional approval, finding the newer proposed features in the plans were "not [] substantially different" from the plans in the original proposals.  Accordingly, the circuit court entered a final order directing the County to approve the cluster development concept plans.

The County appeals from this decision. We granted the following two assignments of

error:

>   1. The trial court erroneously ruled that a comprehensive plan
>      conformity review pursuant to Virginia Code § 15.2-2232 is
>      not a permissible precondition to the approval of the Plaintiffs'
>      cluster concept plan.
>
>   2. The trial court erroneously ruled that planning commission
>      approval of extension of sewer for a traditional subdivision
>      constituted approval of extension of sewer for a substantially
>      different cluster project.

## ANALYSIS

I.   CODE § 15.2-2286.1 DOES NOT APPLY WHEN A PROPOSED CLUSTER DEVELOPMENT
     IS NOT LOCATED ENTIRELY WITHIN AN AREA DESIGNATED FOR WATER AND SEWER
     SERVICE.

The case before us presents a matter of first impression. Resolution of the case turns on

our construction of the applicable statutes. This Court reviews questions of statutory

interpretation de novo. *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104

(2007).

The cluster development statute, Code § 15.2-2286.1, does not reference the planning

commission review statute, Code § 15.2-2232. Code § 15.2-2232 likewise does not reference

Code § 15.2-2286.1. "If apparently conflicting statutes can be harmonized and effect given to

both of them, they will be so construed." *Lake Monticello Owners' Ass'n v. Lake*, 250 Va. 565,

570 (1995) (quoting *Board of Supervisors v. Marshall*, 215 Va. 756, 761 (1975)).

Code § 15.2-2286.1 provides in relevant part that a

>   locality shall not prohibit extension of water or sewer from an
>   adjacent property to a cluster development provided the cluster
>   development is *located within* an area designated for water and
>   sewer service by a county, city, or town or public service authority.

6

Code § 15.2-2286.1(B) (emphasis added). In this instance, the two properties at issue are not located *within* an area designated for water and sewer service. Instead, the properties are *partially* located within an area designated for water and sewer service. In fact, most of the land is actually located *outside* of the area designated for water and sewer service. "Mostly outside of" is not "within."[2] By its plain terms, therefore, Code § 15.2-2286.1(B) does not apply. Because Code § 15.2-2286.1(B) does not control, Code § 15.2-2232 is applicable, and it requires the Developers to submit their plans to the planning commission for review.

The Developers further contend that a review under Code § 15.2-2232 is not required here because Code § 15.2-2232(D) provides a "safe harbor" for a previously approved plan. Code § 15.2-2232(D) provides in relevant part:

> Any public area, facility or use as set forth in subsection A which is identified within, but not the entire subject of, a submission under either § 15.2-2258 for subdivision or subdivision A 8 of § 15.2-2286 for development or both *may be deemed a feature* already shown on the adopted master plan, and, therefore, excepted from the requirement for submittal to and approval by the commission or the governing body; provided, that the governing body has by ordinance or resolution defined standards governing the construction, establishment or authorization of such public area, facility or use or has approved it through acceptance of a proffer made pursuant to § 15.2-2303.

(Emphasis added). As the County notes, however, that statute is permissive, not mandatory. It uses the term "may." *Harper v. Virginia Dep't of Taxation*, 250 Va. 184, 194 (1995) (observing that "the word 'may' is prima facie permissive, importing discretion"). The import of Code § 15.2-2232(D) is that the County has the discretion to deem certain features consistent with the

---

[2] The County concedes that "had the developers proposed the cluster development within the [U]rban [S]ervices [A]rea, there would have been nothing for the County to approve." County Reply Br. at 2.

comprehensive plan. Here, the County exercised its discretion to opt for review of the new

proposed developments under Code § 15.2-2232.[3]

II.    PRIOR APPROVAL OF A DIFFERENT PLAN DOES NOT OBVIATE THE REQUIREMENT FOR
SUBMISSION OF A DIFFERENT PLAN TO THE PLANNING COMMISSION.

The circuit court also concluded that the Planning Commission's prior approvals in 2005

and 2007 mean that no further approval was needed. We disagree for several reasons.

First, prior approvals in 2005 and 2007 did not result in an amendment to the

comprehensive plan. Code § 15.2-2232(A) provides in relevant part:

> Whenever a local planning commission recommends a
> comprehensive plan or part thereof for the locality and such plan
> has been approved and adopted by the governing body, it shall
> control the general or approximate location, character and extent of
> each feature shown on the plan. Thereafter, unless a feature is
> already shown on the adopted master plan or part thereof . . . no
> street or connection to an existing street . . . shall be constructed,
> established or authorized, unless and until the general location or
> approximate location, character, and extent thereof has been
> submitted to and approved by the commission as being
> substantially in accord with the adopted comprehensive plan or
> part thereof.

The Planning Commission's prior review and approval pursuant to Code § 15.2-2232 did not

cause any change to the comprehensive plan. In the words of Code § 15.2-2232(A), prior

approval by a planning commission does not result in the "feature" being "shown on the

[*comprehensive*] *plan*." (emphasis added). Although the Planning Commission did approve the

---

[3] The Developers also assert that review under Code § 15.2-2232 is incompatible with the County's own cluster subdivision ordinance. We perceive no conflict between the two and, in addition, even if it tried to authorize doing so, the County ordinance could not side-step a review mandated by the Code. *See, e.g.*, *Sinclair v. New Cingular Wireless PCS, LLC*, 283 Va. 198, 204 (2012) (noting that "when a statute enacted by the General Assembly conflicts with an ordinance enacted by a local governing body, the statute must prevail"); *Board of Supervisors v. Pumphrey*, 221 Va. 205, 207 (1980) (explaining that "an ordinance may not conflict with state law") (citing *Hanbury v. Commonwealth*, 203 Va. 182, 185 (1961); *Allen v. City of Norfolk*, 196 Va. 177, 180 (1954)).

extensions when it considered the 2005 and 2007 plans, those extensions were not actually built and did not appear on the comprehensive plan when the 2012 cluster development plans were submitted. A planning commission serves primarily in an advisory role. Code § 15.2-2210. It is the governing body of the locality, not the planning commission, that must approve the comprehensive plan and any changes to that plan. Code §§ 15.2-2204, 15.2-2223, and 15.2-2229 (setting forth the process for creating and amending the comprehensive plan). Therefore, the text of Code § 15.2-2232, especially when viewed in concert with related provisions, does not support a conclusion that the comprehensive plan was amended when the Planning Commission approved the Developers' prior subdivision plans.

Second, although the Planning Commission approved prior projects in 2005 and 2007, those prior approvals were expressly limited to those specific applications and did not by their terms signify approval of different plans filed later. Although there clearly were some similarities between the projects in 2005 and 2007 with respect to their impact on the County's sewer system, the 2012 projects indisputably differed from the ones approved in 2005 and 2007. The 2012 projects involve more lots and even some parcels not included in the 2005 and 2007 proposals. Under Code § 15.2-2232, a planning commission is instructed to consider not only a proposed feature's location, but also its character and extent. The Planning Commission could not have contemplated in 2005 and 2007 the character and extent of the 2012 project. The 2012 proposal contemplated the construction of a significant number of additional homes and, therefore, would impose an additional burden on the County's water and sewer infrastructure. Moreover, the County has updated its comprehensive plan since the 2005 and 2007 approvals. This update has resulted in textual changes restricting the extension of sewer outside the Urban Services Area. Some of these changes were not carried over to the County's master sewer map,

9

which created ambiguity for the County's planning staff and further supported the need for a Code § 15.2-2232 review.

In short, the approvals of prior subdivision plans in 2005 and 2007 did not foreclose the requirement of a Code § 15.2-2232 review by the Planning Commission of different plans submitted in 2012.

CONCLUSION

We will reverse the judgment below and remand the case for the County Planning Commission to conduct a review pursuant to Code § 15.2-2232.

*Reversed and remanded.*