COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, O'Brien and Fulton
Argued at Alexandria, Virginia

UNPUBLISHED

BROOKFIELD WASHINGTON, L.L.C.

                                                    MEMORANDUM OPINION* BY
v.          Record No. 2020-23-4                    JUDGE RANDOLPH A. BEALES
                                                    FEBRUARY 11, 2025

THE COUNTY OF FAIRFAX, VIRGINIA, ET AL.


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Stephen C. Shannon, Judge

Thomas Moore Lawson (Patrick R. Hanes; Anna T. Birkenheier;
John Arch Irvin; Thomas Moore Lawson, P.C.; Williams Mullen, on
briefs), for appellant.

T. David Stoner, Deputy County Attorney (Elizabeth D. Teare,
County Attorney; Paul T. Emerick, Senior Assistant County
Attorney; F. Hayden Codding, Assistant County Attorney, on brief),
for appellees.


Brookfield Washington, L.L.C. ("Brookfield") sought an order from the Circuit Court of

Fairfax County approving its proposed subdivision plan after the Department of Land Development

Services of Fairfax County ("LDS") disapproved the subdivision plan. LDS had found that

Brookfield's subdivision plan proposed a new road that was prohibited under the Fairfax County

Comprehensive Plan for land use and development. Following a bench trial, the circuit court denied

Brookfield's claim for declaratory judgment against Fairfax County, the Fairfax County Board of

Supervisors, LDS, and William Hicks, Director of LDS (collectively the "County"). On appeal,

Brookfield argues that the circuit court erroneously construed the governing Virginia statutes and

---

* This opinion is not designated for publication. See Code § 17.1-413(A).

Fairfax County ordinance — and that LDS lacked authority to deny Brookfield's proposed subdivision plan.

## I.  BACKGROUND

Brookfield is a Delaware limited liability company that does business in Fairfax County, Virginia.  Brookfield owns four contiguous parcels of land in the Reston area of Fairfax County. In September 2020, Brookfield sought approval from LDS to develop an eleven lot subdivision on its property.[1]  LDS denied the subdivision plan because Brookfield proposed creating a new road connecting the existing Sunset Hills Road and Hunting Crest Way.[2]  According to LDS, the Fairfax County Comprehensive Plan (the "comprehensive plan") prohibits "any connection, direct or indirect, between Hunting Crest Way and Sunset Hills Road."  The relevant portion of the comprehensive plan provides:

> Sunset Hills Road as it terminates at Hunter Mill Road provides for
> the primary access to the Dulles Toll Road for the residential areas
> and commercial office areas within the eastern periphery of
> Reston.  To facilitate this access and provide better spacing
> between intersections[,] Sunset Hills Road should be realigned,
> east of the Edlin School, to Crowell Road to create a four-leg
> intersection.  A roundabout is the preferred control at this
> intersection, and in the vicinity of the intersection the realignment

---

[1] LDS is the agent designated by the Fairfax County Board of Supervisors to review proposed subdivision plans.  *See* Code § 15.2-2258 and Code § 15.2-2259.

[2] LDS initially rejected Brookfield's subdivision plan on multiple grounds.  The parties then went through several iterations of comments by LDS and resubmission by Brookfield, culminating in a fifth version of the proposed subdivision plan submitted on August 8, 2023, while this litigation was pending in the circuit court.  By order entered on September 15, 2023, the parties agreed to the following stipulation:

> Brookfield's subdivision plan resubmitted on August 8, 2023,
> resolved all but one of the reasons identified for disapproval of the
> subdivision plan under Virginia Code § 15.2-2259.  The only
> remaining reasons identified by the County's Land Development
> Services for disapproval is the application of the Comprehensive
> Plan to the subdivision plan with respect to the proposed
> connection between Hunting Crest Way and Sunset Hills Road.

should go no farther north than Crowell Road. The realignment should avoid adverse impacts to the RPA. When the road is designed the distance from the Hunting Crest community should be maximized, noise impact studies should be conducted, and there should be no direct or indirect connection to Hunting Crest Way. The realigned Sunset Hills Road should retain the minor paved trail designation for Sunset Hills Road recommended in the Countywide Trails Plan.

The comprehensive plan also includes a map illustrating the proposed realignment of Sunset Hills Road (the dotted blue line in the center-right of the map):



ENHANCED PUBLIC TRANSPORTATION CORRIDOR
(SEE AREA PLAN OVERVIEW TEXT)

As of the date of trial in October 2023, Sunset Hills Road had not yet been realigned as suggested in the comprehensive plan.

Brookfield's subdivision plan proposes extending Hunting Crest Way to connect with Sunset Hills Road at its pre-realignment location. A map in Brookfield's subdivision plan illustrates the proposed road connection:



The proposed new road would extend the existing Hunting Crest Way (which begins at the top left corner of the map and currently ends in a cul-de-sac) to intersect perpendicularly with Sunset Hills Road (which runs horizontally along the bottom of the map). Brookfield's subdivision would consist of six lots on the west side of the proposed new road and five lots on the east side of the proposed new road (for a total of eleven lots as highlighted in orange on the map).

After LDS disapproved the subdivision plan, Brookfield filed suit in the circuit court seeking (1) a writ of mandamus ordering the approval of the subdivision plan; (2) an order declaring that the subdivision plan conforms to all applicable laws and ordinances and that the subdivision plan be approved; and (3) damages for inverse condemnation of the property. The County demurred to all three claims, which the circuit court sustained as to the writ of

mandamus and inverse condemnation claims but overruled as to the declaratory judgment action. The circuit court then heard evidence and argument on whether LDS correctly disapproved Brookfield's proposed subdivision plan after concluding that the comprehensive plan prohibited the construction of a new road connecting Hunting Crest Way and Sunset Hills Road.

After a two-day bench trial, the circuit court ruled in favor of the County. The circuit court observed that the comprehensive plan "contains a prohibition on connecting Sunset Hills Road to Hunting Crest Way" and that "[t]he existing disconnect between the two streets is illustrated in the comprehensive plan on the map." The circuit court noted that "[t]he county subdivision ordinance requires roads to be in compliance with the comprehensive plan, in particular county code section 101-2-2, subsection 3(A)."[3] The circuit court then found that, because Brookfield's proposed new road did not conform to the comprehensive plan and thus violated Fairfax County, Virginia, Code of Ordinances § 101-2-2(3)(A), "[t]he disapproval of the subdivision plan" by LDS "was well grounded in fact and law." The circuit court also found, in the alternative, that Brookfield "never sought a determination by the local planning commission that the subdivision plan resubmitted on August 8th of 2023 was substantially in accord with the adopted comprehensive plan," which "would have been the proper protocol under Virginia Code section 15.2-2232, since the proposed connection of Hunting Crest Way and Sunset Hills Road is a feature not shown on the comprehensive plan." Brookfield appeals to this Court.

## II. ANALYSIS

On appeal, Brookfield assigns four errors to the circuit court's judgment. First, Brookfield argues that the circuit court erred in ruling that the proposed subdivision plan "did not comply with the Fairfax County Comprehensive Plan" because the circuit court "misconstrued

---

[3] Fairfax County, Virginia, Code of Ordinances § 101-2-2(3)(A) provides, "The arrangement, character, extent, width, grade and location of all streets or highways shall conform to the comprehensive plan and official map, as adopted."

the Fairfax County Comprehensive Plan as containing a prohibition on connecting Sunset Hills Road to Hunting Crest Way when such prohibition is expressly conditioned on the new Sunset Hills Road being 'designed' which has yet to occur." Second, Brookfield contends that the circuit court erred in ruling that

> Fairfax County Ordinance 101-2-2(3)(A) applied to Brookfield's by-right subdivision plan instead of Fairfax County Ordinance 101-2-2(3)(B), as Subsection B is to apply when "such street is not shown in the comprehensive plan" and the extension of Hunting Crest Way included in the by-right subdivision plan was not shown on the Fairfax County Comprehensive Plan.[4]

Third, Brookfield asserts that the circuit court erred in ruling, in the alternative, that "Virginia Code § 15.2-2232 requires a developer of a by-right development, having had its by-right subdivision plan denied by Fairfax County Land Development Services, to seek a determination from the Fairfax County Planning Commission that the subdivision plan is 'substantially in accord' with the Fairfax County Comprehensive Plan." Finally, Brookfield maintains that the circuit court erred in ruling that LDS

> was permitted to disapprove the by-right subdivision on the basis of non-conformity with the Fairfax County Comprehensive Plan, as this ruling permits a legislative process (interpretation of the Fairfax County Comprehensive Plan) to supersede the administrative process of subdivision plan approval which is inconsistent with Fairfax County and Commonwealth of Virginia laws, ordinances, and Code and violates property rights granted under the Constitution.[5]

---

[4] Fairfax County, Virginia, Code of Ordinances § 101-2-2(3)(B) provides, "Where such street is not shown in the comprehensive plan or official map, it shall conform to the duly adopted County standards relating to street design and construction in the Public Facilities Manual. Such standards shall be designed in such manner as to reflect the intensity of the projected use."

[5] To the extent that Brookfield now claims that "LDS's interpretation of the Comprehensive Plan was a legislative act that exceeded LDS's authority" and, thus, "could not form the basis of the decision to disapprove the Subdivision Plan," we do not reach this argument on appeal because Brookfield failed to obtain a ruling from the circuit court on this issue. *See McDaniel v. Commonwealth*, 73 Va. App. 299, 313 (2021) ("It is the appellant's burden 'to obtain a clear ruling from the [circuit] court' on an issue he wishes to raise on appeal.

The Supreme Court has stated that, on appeal of the disapproval of a proposed subdivision plan by a local planning commission or its designated agent, the circuit court must sustain the decision "unless the decision 'was not properly based on the ordinance applicable thereto, or was arbitrary or capricious.'" *James v. City of Falls Church*, 280 Va. 31, 41 (2010) (quoting Code §§ 15.2-2259(D) and 15.2-2260(E)). On appeal from the circuit court to this Court, the circuit court's "judgment is presumed correct and will not be set aside unless the judgment is plainly wrong or unsupported by the evidence." *Id.* (quoting *Bd. of Supervisors of Culpeper Cnty. v. Greengael, L.L.C.*, 271 Va. 266, 277 (2006)). However, "[i]nterpretation of a local zoning ordinance, like interpretation of a statute, is a pure question of law, subject to de novo review." *Alexandria City Council v. Mirant Potomac River, LLC*, 273 Va. 448, 455 (2007).

"When construing a statute, our primary objective is to ascertain and give effect to the legislative intent, which 'is initially found in the words of the statute itself.'" *Chaffins v. Atl. Coast Pipeline, LLC*, 293 Va. 564, 568 (2017) (quoting *Crown Cent. Petroleum Corp. v. Hill*, 254 Va. 88, 91 (1997)). It is well-established that "we determine the legislative intent from the words used in the statute, applying the plain meaning of the words unless they are ambiguous or would lead to an absurd result." *Wright v. Commonwealth*, 278 Va. 754, 759 (2009). "Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed." *Dominion Tr. Co. v. Kenbridge Constr. Co.*, 248 Va. 393, 396 (1994) (quoting *Barr v. Town & Country Props., Inc.*, 240 Va. 292, 295 (1990)).

In Virginia, "all powers granted to localities shall be vested in their respective governing bodies." Code § 15.2-1401. The General Assembly has required that all local governing bodies

---

This burden stems from the requirement that a litigant state an objection 'with reasonable certainty at the time of the ruling.'" (first quoting *Young v. Commonwealth*, 70 Va. App. 646, 657 (2019); and then quoting Rule 5A:18)).

adopt reasonable ordinances regulating "the orderly subdivision of land and its development." Code § 15.2-2240; *see Logan v. City Council*, 275 Va. 483, 495 (2008) (noting that "[t]hose subdivision ordinances must include the provisions specified in Code § 15.2-2241, and may contain certain optional provisions set forth in Code § 15.2-2242"). A landowner desiring to subdivide his land must "submit a plat of the proposed subdivision to the planning commission of the locality, or an agent designated by the governing body thereof for such purpose." Code § 15.2-2258. The local planning commission or its designated agent must then, in turn, "act on any proposed plat within 60 days after it has been officially submitted for approval by either approving or disapproving the plat in writing, and giving with the latter specific reasons therefor." Code § 15.2-2259(A)(1); *see also* Code § 15.2-2259(3).

The General Assembly has also required that all local planning commissions "prepare and recommend a comprehensive plan for the physical development of the territory within its jurisdiction" and that the local governing body then "adopt a comprehensive plan for the territory under its jurisdiction." Code § 15.2-2223(A); *see Stafford Cnty. v. D.R. Horton, Inc.*, 299 Va. 567, 570-71 (2021). The locality's comprehensive plan must "designate the general or approximate location, character, and extent of each feature, including any road improvement and any transportation improvement, shown on the plan," and it must also "indicate where existing lands or facilities are proposed to be extended, widened, removed, relocated, vacated, narrowed, abandoned, or changed in use as the case may be." Code § 15.2-2223(A). Once a comprehensive plan has been recommended by the local planning commission and then approved and adopted by the local governing body, the comprehensive plan "shall control the general or approximate location, character and extent of each feature shown on the plan." Code § 15.2-2232(A). Thus, to the extent that a proposed subdivision plan includes a feature (such as

a road) as referenced in Code § 15.2-2232(A), that feature is subject *both* to the statutes

applicable to subdivision plans *and* to the statutes applicable to local comprehensive plans.

Code § 15.2-2232(A) makes clear that

> unless a feature is already shown on the adopted master plan or part thereof or is deemed so under subsection D, no street or connection to an existing street . . . shall be constructed, established or authorized, unless and until the general location or approximate location, character, and extent thereof has been submitted to and approved by the [local planning] commission as being substantially in accord with the adopted comprehensive plan or part thereof.

Therefore, "[a] developer seeking to build a 'feature' not shown on the comprehensive plan must

petition the planning commission for approval," and the local planning commission "must then

determine whether the request for extension of this feature is 'substantially in accord' with the

comprehensive plan." *D.R. Horton*, 299 Va. at 570-71 (quoting Code § 15.2-2232(A)).

However, Code § 15.2-2232(D) provides a potential exception to the Code

§ 15.2-2232(A) approval process requirement for developers of subdivisions (as opposed to other

forms of land development). Code § 15.2-2232(D) states:

> Any public area, facility, park or use as set forth in subsection A which is identified within, but not the entire subject of, a submission under either [Code] § 15.2-2258 for subdivision or subdivision A 8 of [Code] § 15.2-2286 for development or both *may* be deemed a feature already shown on the adopted master plan, and, therefore, excepted from the requirement for submittal to and approval by the commission or the governing body, provided that the governing body has by ordinance or resolution defined standards governing the construction, establishment or authorization of such public area, facility, park or use or has approved it through acceptance of a proffer made pursuant to [Code] § 15.2-2303.

(Emphasis added). The Supreme Court has recognized that Code § 15.2-2232(D) "is permissive,

not mandatory," because the statute "uses the term 'may.'" *D.R. Horton*, 299 Va. at 576

(quoting *Harper v. Va. Dep't of Tax'n*, 250 Va. 184, 194 (1995) (observing that "the word 'may'

is *prima facie* permissive, importing discretion")).  "The import of Code § 15.2-2232(D) is that the County has the discretion to deem certain features consistent with the comprehensive plan." *Id.*

Taken together, the statutory scheme for land development provides two possible paths for a developer of a subdivision to obtain approval for a feature (such as a new road) that is not shown on the comprehensive plan: (1) the developer may petition the local planning commission to obtain a decision that the new feature is "substantially in accord" with the comprehensive plan under Code § 15.2-2232(A), or (2) the developer may obtain a decision from the local planning commission or its designated agent deeming the new feature to be "already shown" on the comprehensive plan under Code § 15.2-2232(D).

In this case, it is clear that Brookfield's proposed new road is not "already shown" on the comprehensive plan.  *See* Code § 15.2-2232(A).  It is also clear that LDS did not deem Brookfield's proposed new road to be "already shown" on the comprehensive plan.  *See* Code § 15.2-2232(D).  Given these undisputed facts, the circuit court correctly concluded that Brookfield was required to petition the County's local planning commission under Code § 15.2-2232(A) to obtain a decision that the proposed new road is "substantially in accord" with the Fairfax County Comprehensive Plan.  However, Brookfield simply did not seek or obtain a decision from the County's local planning commission that the proposed road is "substantially in accord" with the comprehensive plan under Code § 15.2-2232(A).  Therefore, the circuit court did not err in concluding that Brookfield had not satisfied the requirements of Code § 15.2-2232 for the proposed new road.

Contrary to Brookfield's assertion that Code § 15.2-2232(D) required LDS to deem the proposed road as "already shown" on the comprehensive plan (so Brookfield did not need to satisfy the Code § 15.2-2232(A) approval process), Code § 15.2-2232(D) permitted, *but did not*

*require*, LDS to deem Brookfield's proposed new road as "already shown" on the comprehensive plan. Indeed, the Supreme Court has already rejected Brookfield's construction of Code § 15.2-2232(D) by holding that the statute "is permissive, not mandatory. It uses the term 'may.' The import of Code § 15.2-2232(D) is that the County has the discretion to deem certain features consistent with the comprehensive plan." *D.R. Horton*, 299 Va. at 576 (quoting *Harper*, 250 Va. at 194). However, in this case, LDS did not deem Brookfield's proposed new road as "already shown" on the comprehensive plan. Code § 15.2-2232(A), by its plain terms, prohibits the construction or authorization of new features (such as Brookfield's proposed new road) that are not already shown on the comprehensive plan unless the local planning commission has approved the feature "as being substantially in accord with the adopted comprehensive plan." Brookfield, however, did not seek or obtain such a decision from the local planning commission pursuant to Code § 15.2-2232(A).[6] Because LDS's determination that Brookfield's proposed new road was prohibited by Code § 15.2-2232 was properly based on that statute and on the applicable local ordinance and was not arbitrary or capricious, the circuit court did not err in upholding LDS's disapproval of Brookfield's proposed new road.[7]

---

[6] Brookfield also did not utilize its administrative remedies by appealing to the Fairfax County Planning Commission and the Fairfax County Board of Supervisors before going to the circuit court with this appeal.

[7] "[T]he doctrine of judicial restraint requires us to 'decide cases "on the best and narrowest grounds available."'" *Holman v. Commonwealth*, 77 Va. App. 283, 296 n.2 (2023) (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017)). "The 'best' answer to a legal question is the one with which the least number of jurists would disagree or, in other words, the one with which the greatest number of jurists would agree." *Butcher v. Commonwealth*, 298 Va. 392, 396 (2020). "The 'narrowest' answer to a legal question is the one affecting the least number of cases." *Id.* Having upheld the circuit court's judgment on this dispositive ground, we do not reach Brookfield's additional arguments relating to the proposed new road's adherence to the Fairfax County comprehensive plan and local ordinances.

## III. CONCLUSION

In short, the evidence in the record before this Court on appeal supports the circuit court's judgment that Brookfield has not met the requirements of Code § 15.2-2232 for the new road it proposed in its subdivision plan. Therefore, we do not disturb the circuit court's judgment.

*Affirmed.*